

# In the Missouri Court of Appeals
# Eastern District

**DIVISION II**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED104175 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of Marion County - Hannibal |
| vs. | ) | Cause No. 13MR-CR00533 |
| | ) | |
| JEFFREY J. NICHOLS, | ) | Honorable Rachel L. Bringer-Shepherd |
| | ) | |
| Respondent. | ) | Filed: August 30, 2016 |

## OPINION

This is an interlocutory appeal in which the State of Missouri ("the State") appeals the trial court's order granting Jeffrey Nichols's ("Defendant's") motion to suppress his statements made during a police interview. In the underlying criminal case, Defendant was charged with one count of first-degree murder, three counts of first-degree assault, one count of second-degree assault, four counts of first-degree robbery, two counts of first-degree burglary, one count of second-degree burglary, two counts of first-degree tampering, one count of stealing, one count of knowing burning or exploding, and three counts of armed criminal action. We reverse the grant of Defendant's motion to suppress and remand for further proceedings.

## I.     Jurisdiction

Before we discuss the background and merits of the State's appeal, we will address Defendant's contention that jurisdiction lies in the Supreme Court of Missouri and this appeal

1

should be dismissed. Jurisdiction is proper in this Court. "The court of appeals shall have general appellate jurisdiction in all cases except those within the exclusive jurisdiction of the supreme court." Mo. Const. art. V, § 3. Therefore, any appeal not reserved for the Supreme Court of Missouri lies properly in the Missouri Court of Appeals. Defendant argues that jurisdiction lies in the Supreme Court of Missouri under § 547.200.3, RSMo since this case "involve[s] first degree murder and capital murder." We disagree.

Section 547.200.3 references two statutes (§§ 565.001 and 565.003) that were repealed and replaced, effective July 1, 1984. RSMo. Cum. Supp. 1983. The State argues that once these statutes were repealed their references in § 547.200.3 no longer intended to confer jurisdiction to the Supreme Court. We agree. Moreover, even if the statute intended to confer original appellate jurisdiction to the Supreme Court of Missouri, it would not have authority to do so. Mo. Const. art. V, § 3 controls the Supreme Court's jurisdiction, and it cannot be enlarged or diminished by a statute. *See Cochran v. State*, 835 S.W.2d 954, 955 (Mo. App. W.D. 1992).

Under Mo. Const. art. V, § 3, the Supreme Court has exclusive appellate jurisdiction over, *inter alia*, "all cases where the punishment imposed is death." Although, this case involves a charge of first-degree murder, "the punishment of death [has] not been imposed, and might never be imposed." *Cochran*, 835 S.W.2d at 956. Accordingly, the Supreme Court of Missouri does not have exclusive jurisdiction over this interlocutory appeal, and therefore, our Court has appellate jurisdiction. *See* Mo. Const. art. V, § 3. Based on the foregoing, Defendant's request for dismissal is denied.

## II.     Factual and Procedural Background

On April 1, 2013, Detective Tracy Whearty and Detective Mark Arnsperger of the Moberly Police Department interviewed Defendant in an interview room at the Moberly Police

2

Department about several crimes that occurred on or about March 31, 2013. The record contains a transcript and video of it. Before the interview began, the detectives read *Miranda*[1] warnings to Defendant, then Defendant signed and initialed a Rights of Persons form to confirm he understood the warnings. Shortly thereafter, Defendant began answering the detectives' questions about the series of crimes. Defendant admitted that he had stolen a knife, and he drew a picture of it for the detectives. Shortly after drawing the picture, the Defendant stated that he wanted a lawyer present before proceeding with the interview. Here is the pertinent part of the conversation between Detective Arnsperger and Defendant:

**Det. Arnsperger:** All right. Where did that knife come from?

**Defendant:** From Wal-Mart.

**Det. Arnsperger:** I mean what section out at Wal-Mart?

**Defendant:** The sporting goods aisle. Honestly, from this point on, I want a lawyer present.

**Det. Arnsperger:** Okay. Well, you're getting charged with murder.

**Defendant:** Who, me?

**Det. Arnsperger:** Yeah, you.

**Defendant:** Just me?

**Det. Arnsperger:** Yeah.

**Defendant:** That's crazy.

**Det. Arnsperger:** Why?

**Defendant:** How am I getting charged with murder?

**Det. Arnsperger:** Do you want to continue or do you want to stop?

**Defendant:** I'm -- I want to continue. This is crazy. Who the hell did I murder?

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 478 (1966).

After this exchange, Defendant made several incriminating statements. Defendant then timely filed a motion to suppress his statements. The trial court granted Defendant's motion, finding that Detective Arnsperger initiated conversation with Defendant after Defendant invoked his right to counsel and that Defendant's statement that he 'want[ed] to continue' did not sufficiently constitute a knowing or voluntary waiver. The State then filed this interlocutory appeal.

### III.  Standard of Review

The State is entitled to appeal a trial court's order suppressing evidence under § 547.200.1. *State v. Sparkling,* 363 S.W.3d 46, 49 (Mo. App. W.D. 2011). "When reviewing a trial court's ruling on a motion to suppress, the inquiry is limited to whether the court's decision is supported by substantial evidence." *State v. Harris*, 477 S.W.3d 131, 140 (Mo. App. E.D. 2015).

We will only reverse a trial court's ruling on a motion to suppress if the decision is clearly erroneous. *Id*. This Court considers the record made at the suppression hearing and at trial, and we "review all facts and reasonable inferences therefrom in the light most favorable to the trial court's decision." *State v. Byrd*, 389 S.W.3d 702, 707 (Mo. App. E.D. 2012). Our Court gives deference to the trial court's factual findings and credibility determinations, but we review all questions of law *de novo*. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998).

### IV.  Discussion

In the State's sole point on appeal, it alleges that the trial court clearly erred in granting Defendant's motion to suppress his statements because Defendant voluntarily, knowingly, and intelligently waived his previously invoked right to counsel by reinitiating discussion with the detectives. We agree.

4

"The Fifth Amendment's prohibition against self-incrimination provides an accused the right to counsel during custodial interrogation." *State v. Nicklasson*, 967 S.W.2d 596, 606 (Mo. banc 1998) (citing *Miranda v. Arizona,* 384 U.S. 436, 478 (1966)). A custodial interrogation occurs when questioning has been "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.  "Determining whether the [defendant's] right to counsel has been violated during a custodial interrogation requires a two-step analysis*." State v. Norman*, 431 S.W.3d 563, 569 (Mo. App. E.D. 2014). The first step is to determine if the defendant properly invoked his right to counsel, and the second step is to determine whether he voluntarily, knowingly, and intelligently "waived his previously invoked right to counsel by initiating further conversation." *Id*. In this case, since both parties agree that Defendant effectively invoked his right to counsel by stating that he "wante[ed] a lawyer present," our analysis focuses on step two. Additionally, there is no dispute that Defendant was in custody at all times during the interview.

The State bears the burden of showing that the accused initiated further discussion and that he voluntarily, knowingly, and intelligently waived his right to counsel. *Byrd*, 389 S.W.3d at 708. On review, we "indulge every reasonable presumption against waiver of fundamental constitutional rights." *State v. Bucklew*, 973 S.W.2d 83, 90 (Mo. banc 1998) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

### A.  *Reinitiating Conversation*

"A request for counsel bars further interrogation until an attorney is present, unless the accused in the interim voluntarily initiates discussion." *State v. Bannister*, 680 S.W.2d 141, 147-48 (Mo. banc 1984) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). The United States Supreme Court established this requirement in *Edwards* to "ensure that police will not take

5

advantage of the mounting coercive pressures of *prolonged police custody* by *repeatedly* attempting to question a suspect who previously requested counsel until the suspect is badgered into submission." *Maryland v. Shatzer*, 559 U.S. 98, 105 (2010) (emphasis added). *Edwards* created a "judicially crafted rule," which is only justified when the benefits of its prophylactic purpose outweigh its costs. *Id.* at 106. Extending the *Edwards* rule "yields diminished benefits" and "increases its costs." *Id*. at 108. The fundamental purpose of the *Edwards* rule is to preserve an accused's Fifth Amendment rights by preventing coerced, *involuntary* confessions. *See id* at 106. However, an overly broad application of the *Edwards* rule forces courts to suppress *voluntary* confessions and "deters law enforcement officers from even trying to obtain [them]". *Id.* at 108; *See Minnick v. Mississippi*, 498 U.S. 146, 151 (1990). Suppressing voluntary confessions would also impose a heavy cost; confessions are "trustworthy and highly probative evidence," and therefore, "essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Id*; *Shatzer*, 559 U.S. at 108 (quoting *Moran v. Burbine*, 475 U.S. 412, 426 (1986).

In the instant case, the State contends that Defendant reinitiated a conversation about the alleged crimes when he stated, "I want to continue." In *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983), the United States Supreme Court reasoned that making an inquiry that shows the accused "evinced a willingness and a desire for a generalized discussion about [an] investigation" is sufficient to show that the accused "initiated" communication with the police. *Id* at 1045-46. Nonetheless, a defendant's willingness to discuss the conversation must be of his own volition, something which cannot be established if defendant was merely "respond[ing] to [a] further police-initiated custodial interrogation." *Edwards*, 451 U.S. at 484.

In *Bradshaw*, the defendant asked the police, "What is going to happen to me now?" *Bradshaw,* 462 U.S. at 1045. The U.S Supreme Court found that the defendant "initiated" further conversation about the investigation by demonstrating his willingness and desire for a generalized discussion. *Id.* Immediately following the defendant's question, the police reminded the defendant that he was not obligated to speak with them. *Id*. at 1046. The U.S. Supreme Court noted that the reminder further supported that "there was not a violation of the *Edwards r*ule." *Id*. Similarly, here, after he invoked his right to counsel, Defendant asked the detectives, "How am I getting charged with murder?" This shows that Defendant "evinced a willingness and a desire [to have] a generalized discussion about the investigation." *See id*. at 1045-46. Additionally, like in *Bradshaw*, Detective Arnsperger immediately reminded Defendant that he had no obligation to talk to him without an attorney ("Do you want to continue or do you want to stop?"). Thus, assuming Defendant's statement that he "want[ed] to continue" was not a product of interrogation, Defendant would be re-initiating the custodial interrogation. *See Rhode Island v. Innis*, 446 U.S. at 299-300 (1980) (explaining that statements made "freely and voluntarily without any compelling influences" are not "the product of interrogation."); *see also Edwards*, 451 U.S. at 484 (stating that "a valid waiver of [a previously invoked right to counsel] cannot be established by showing only that [a suspect] responded to further police-initiated custodial interrogation.").

Both Missouri and the Eighth Circuit employ the same definition of "custodial interrogation," relying primarily on the United States Supreme Court's interpretation in *Miranda* and *Innis*. *See United States v. Orr*, 636 F.3d 944 (8th Cir. 2011); *see also United States v. Allen*, 247 F.3d 741 (8th Cir. 2001); *State v. Bell*, 488 S.W.3d 228, 242 (Mo. App. E.D. 2016); *State v. Wade*, 866 S.W.2d 908, 910-11 (Mo. App. W.D. 1993); *State v. Myers*, 291 S.W.3d 292, 295-96

7

(Mo. App. S.D. 2009); *Byrd*, 389 S.W.3d at 702. In *Miranda v. Arizona*, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. Interrogation refers to express questioning and its "functional equivalent," which includes "any words or actions by the police…that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. However, the police are not required to cut off all conversation. *State v. Cook*, 67 S.W.3d 718, 722 (Mo. App. S.D. 2002). In analyzing whether an interrogation occurred, we primarily focus on the perceptions of the suspect, not the intent of the police. *Bell*, 488 S.W.3d at 242. "Inquiries or statements…relating to routine incidents of the custodial relationship, will not generally initiate a conversation" that constitutes an interrogation. *Bradshaw*, 462 U.S. at 1045. Moreover, the definition of interrogation excludes words or actions "normally attendant to arrest and custody." *Innis,* 446 U.S. at 301. Further, courts in Missouri and the Eighth Circuit have consistently held that mere informative statements about a defendant's charges and evidence against him are not the functional equivalent of interrogation. *See State v. Terry*, No. WD 78345, 2016, WL 3688486 (Mo. App. W.D. July 12, 2016) (stating that "[t]here is no support in Missouri case law that being informed of pending charges is, in and of itself, tantamount to an interrogation."); *see also United States v. Barnes*, 195 F.3d 1027, 1029 (8th Cir. 1999) (stating that doing no more than telling a defendant that he was going to be booked for possession of a firearm did not constitute an interrogation); *U.S. v. McGlothen* 556 F.3d 698, 701-02 (8th Cir. 2009) (explaining that "the officer's words indicating that [the defendant] was to be charged with possession of a firearm were statements of fact, not the functional equivalent of an

8

interrogation."); *United States v. Wipf*, 397 F.3d 677, 685 (8th Cir. 2005); *Bell*, 488 S.W.3d at 243.

In *U.S. v. Allen*, the Eighth Circuit noted that "a simple description of the status of [an] ongoing investigation," without accompaniment of other threats or compelling pressure, is "not designed to, nor [is] it reasonably likely to, elicit an incriminating response." *Allen,* 247 F.3d at 765. In *Allen,* after the suspect participated in a police lineup, a detective informed the suspect that three out of the four eyewitnesses in the case had placed him at the scene of the crime. *Id.* at 764. The Eighth Circuit held that a detective informing the defendant of his lineup results did not constitute an interrogation. *Id*. at 765. The Court found that keeping a suspect informed of the investigation's progress should be "encouraged" and that it "contributes to the intelligent exercise of his judgment and may likely make firm his resolve to refuse to talk to the police without counsel." *Id*. In the present case, much like the suspect in *Allen*, Defendant was simply informed of his charges without any other threats or compelling pressure. The video interview shows that neither detective raised his or her voice during the interview, and both detectives remained casually seated while communicating with Defendant. The video interview also reflects that the detectives' conduct was not threatening.

The facts in *United States v. Barnes* are even more similar to the case at hand. *See. Barnes*, 195 F.3d at 1028-29. In *Barnes*, while the defendant was in custody and had invoked his right to counsel, an officer informed him that he was going to be booked for possession of a firearm. *Id* at 1029. The defendant responded that he "didn't think so." *Id.* The officer asked the defendant what he meant, and the defendant proceeded to make inculpatory statements. *See id*. In that case, the Eighth Circuit found that neither the detective's statement that the defendant was being booked for possession of a firearm, nor the detective's question to clarify what the

defendant meant by "didn't think so" constituted an interrogation. *Id*. Thus, the defendant's subsequent admissions were not products of interrogation, and the statements were admissible. *Id*.

Similar to *Barnes*, in this case, Detective Arnsperger informed Defendant of his charges and then followed up with an express question to clarify Defendant's response.[2] As in *Barnes*, Detective Arnsperger's statement of charges and clarifying question do not qualify as interrogations. Detective Arnsperger demonstrated that he had ended the interrogation and he was respecting Defendant's right to counsel by asking Defendant if he wanted to stop or continue discussing the investigation. Accordingly, Defendant's statement that "he want[ed] to continue" re-initiated communication about the investigation, and any incriminating statements he made after that should not be suppressed if he validly waived his right to counsel.

Therefore, Detective Arnsperger's statement that Defendant was being "charged with murder" does not constitute an interrogation, and neither should his clarifying question of "why?" in response to Defendant's ambiguous comment.[3]

Defendant relies primarily on *State v. Bell* to show Defendant did not re-initiate communication with the police after invoking his right to counsel. *Bell*, 488 S.W.3d at 242. Defendant's reliance is misplaced. The police activity in *Bell* is vastly different from Detective Arnsperger's and Detective Whearty's. In *Bell*, our Court focused on the detectives' persistent badgering and "pleas to Bell's conscience" that was deliberately designed to "coax Bell into waiving his right to counsel." *Id.* at 243. The detectives told Bell that the killing was "ruthless" and that the "jury would have no mercy" if he could not explain what happened. *Id* at 244. In

---

[2] Defendant: "Who, me?...That's crazy."
  Detective Arnsperger: "Why?"
[3] "That's crazy."

Bell's first interview, he asserted his right to counsel *several times* over a thirty-five minute conversation. *Id*. Then, several hours later, Bell was taken into another interview room and questioned for an hour before he agreed to talk without his counsel present. *Id.*

Unlike in *Allen* and *Barnes*, our Court in *Bell* found that "the detectives went far beyond simply reading facts [to Bell]." *Id.* at 243. The detectives made "numerous pleas to Bell's conscience in a deliberate attempt to coax Bell into waiving his right to trial." *Id.* Accordingly, our Court held that the detectives should have known that their statements were "reasonably likely to provoke Bell" into waiving his right to counsel and make incriminating statements. *Id.*

The present case is much more similar to *Allen* and *Barnes* than *Bell*. Detective Arnsperger and Whearty did not make pleas to Defendant's conscience, nor did they act coercively to induce an involuntary confession. Rather, the detectives merely informed Defendant of his charges. They did not conduct themselves in a way that was "reasonably likely to elicit an incriminating response." Accordingly, the detectives' words and actions cannot be deemed the functional equivalent of a custodial interrogation, and Defendant reinitiated conversation when he stated that he wanted to continue discussing the crimes in question.

**B. Valid Waiver of Right to Counsel**

A defendant's waiver of his right to counsel will be considered valid only if he waives his right voluntarily, knowingly, and intelligently. *Shatzer*, 559 U.S. at 104. Whether waiver is "voluntary" and "knowing and intelligent" are two distinct inquiries. *Edwards*, 451 U.S. 484 (1981).

**i. Voluntary Waiver**

"The test for voluntariness is whether, under the totality of the circumstances, the defendant was deprived of free choice to admit, to deny, or to refuse to answer and whether

11

physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Johnson*, 207 S.W.3d 24, 45 (Mo. banc 2006). The factors used to make that determination include "whether the defendant was advised of his rights and understood them, the defendant's physical and mental state, the length of questioning, the presence of police coercion or intimidation, and the withholding of physical needs." *Id.* Although voluntariness is measured under the totality of the circumstances, the presence of coercive police activity is the primary factor. *See State v. Smith*, 944 S.W.2d 901, 910 (Mo. banc 1997). In fact, "[C]oercive police activity is a *necessary predicate* to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (emphasis added).

Here, Detective Arnsperger informed Defendant that he was being charged with murder, however, informing a suspect of his charges does not constitute coercion. Moreover, there is nothing in the record to indicate that Defendant was in a vulnerable physical or mental state. The length of questioning was reasonable too; Defendant waived his right to have a lawyer present by saying that he "want[ed] to continue" only nineteen minutes after questioning began.

Most importantly, the record reflects that neither Detective Whearty nor Detective Arnsperger acted in an improper, coercive manner. There is no evidence that Defendant's will was "overborne" during the interview. Defendant does not even claim that the detectives were coercive. Moreover, the State proffered enough evidence with the video interview and transcript of Defendant's custodial questioning to demonstrate that the detectives did not act in a coercive manner. Accordingly, under the totality of the circumstances, Defendant's waiver of his right to counsel and subsequent statements were voluntary.

12

### ii. *Knowing and Intelligent Waiver*

We consider the totality of the circumstances when determining whether a defendant waives his rights "knowingly and intelligently." *State v. Powell*, 798 S.W.2d 709, 713 (Mo. banc 1990). "The requirement that a waiver of rights be knowing and intelligent does not mean that a defendant must know and understand all of the possible consequences of the waiver." *Id.* Rather, the requirement hinges on whether the defendant understood the warnings and "that he at all times knew that he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction." *Id.* (quotations omitted). "A knowing and intelligent waiver of the right to silence is normally shown by having a police officer testify that he read the accused his rights, asked whether the rights were understood, and received an affirmative response." *State v. Wise*, 879 S.W.2d 494, 505 (Mo. banc 1994) (*overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888 n.7 (Mo. banc 2008)).

Here, Defendant was given his Miranda warnings at the beginning of the interview, both verbally and in writing on his Rights of Person form. Defendant was then told to sign the form and initial each Miranda warning if he understood them. The video interview shows that Defendant signed and initialed the form without asking any questions or exhibiting any other signs of confusion. When, as in this case, "one is informed of his right to remain silent under Miranda, and understands his right to remain silent under Miranda, and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent." *Bucklew*, 973 S.W.2d at 90. This creates a strong presumption that Defendant understood the warnings and his rights.

In addition to signing the Rights of Person form, Defendant further demonstrated his understanding of his Miranda warnings by invoking his right to counsel, saying, "Honestly, from

13

this point on, I want a lawyer present." *See Powell*, 798 S.W.2d at 713. This shows that Defendant knew he could "stand mute and request a lawyer." Detective Arnsperger even reminded Defendant that he had the choice to continue talking or wait for counsel by asking, "Do you want to continue or do you want to stop?" Also, at the conclusion of the interview, Defendant confirmed in his written statement that he completed immediately after the interview ended that he was "warned and advised" of his rights on the Rights of Persons form.

Further, in his interview with the police, Defendant admitted he had been in prison at least two times before he was investigated for this case. Accordingly, he had exposure and familiarity with his rights before the investigation at issue, which further supports that Defendant knew and understood his rights and that he waived them by reinitiating conversation with the detectives. *See State v. Hunter*, 840 S.W.2d 850, 859 (Mo. banc 1992) (noting that "prior contact with the criminal justice system is certainly a factor" in determining whether waiver is knowing and intelligent).

Defendant was given his rights orally and in written form before the interview commenced. He acknowledged that he understood his rights by signing and initialing his Rights of Persons form before the interview, and he confirmed his understanding again by signing his written statement at the conclusion of the interview.

Moreover, there is nothing in the record to suggest that Defendant did not understand his rights. Based on the forgoing, we find that State demonstrated that Defendant knowingly and intelligently waived his right to remain silent until counsel was present.

### C. Conclusion

Because Defendant reinitiated the conversation after he voluntarily, knowingly, and intelligently waived his right to counsel by saying "I want to continue" and it was not a product

14

of police interrogation, the trial court clearly erred in granting Defendant's motion to suppress statements. Point granted.

## V.     Conclusion

For the reasons set forth above, we reverse the trial court's order granting Defendant's motion to suppress his statements, and we remand for further proceedings consistent with this opinion.

_____
Colleen Dolan, Judge

Sherri B. Sullivan, P.J., concurs.
Roy L. Richter, J., concurs.