

# In the Missouri Court of Appeals
## Eastern District
**DIVISION ONE**

|  |  |  |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112934 |
|  | ) |  |
| Plaintiff/Appellant, | ) |  |
|  | ) |  |
| vs. | ) | Appeal from the Circuit Court |
|  | ) | of Franklin County |
| JESSE M. BROMWELL, | ) | No.23AB-CR00570-01 |
|  | ) |  |
| Defendant/Respondent. | ) | Honorable Ryan J. Helfrich |
|  | ) |  |
|  | ) |  |
|  | ) | Filed: April 1, 2025 |

The State of Missouri appeals an order of the Circuit Court of Franklin County suppressing evidence in a case against Defendant, Jesse M. Bromwell. The State claims the trial court's order was erroneous because the evidence was seized during a lawful search after consent was obtained from the homeowner. We reverse and remand.

<u>Factual and Procedural Background</u>

On March 9, 2023, Sullivan police officers identified Defendant as a suspect in a burglary that was captured on surveillance video. Officer T and Officer C were familiar with Defendant and went to Defendant's known address to make an arrest. The officers were aware that Defendant's father owned the residence and that Defendant was known to stay with his father. Upon arrival, Father opened the door and let the officers into the home. The officers walked into the home and identified Defendant, shirtless and sitting in a common area.

Defendant was detained. Defendant indicated that he wanted to get a shirt from a back bedroom but changed his mind upon learning an officer would accompany him. Defendant was taken outside of the home and placed in the patrol vehicle. When Defendant was secured in the patrol vehicle, Officer T told Defendant he would go back inside the home, to which Defendant replied that he did not live there.

Officer T testified that he then spoke with Father and got consent to search the residence. Officer T searched the home while Officer C remained in the living room, conversing casually with Defendant's father. Officer T found multiple items in the back bedroom that were reported missing after the burglary.

The State charged Defendant with burglary in the second degree, section 569.170 RSMo. and stealing, section 570.030 RSMo. Defendant filed a motion to suppress the evidence found in the back bedroom, challenging the constitutional validity of that search. At Defendant's motion to suppress hearing before the trial court, the State's evidence consisted of testimony from Officer T and Officer C. The trial court found Officer T's testimony credible and relied upon that testimony in rendering its judgment. The court also found Officer C's testimony reliable and noted that it mirrored the testimony of Officer T without adding to or subtracting from it.

The trial court granted the motion to suppress, finding the State failed to meet its burden to justify the warrantless search on the grounds that (1) "there is zero evidence that Defendant's father had common authority, based on mutual use of the searched area, to consent," and (2) the hearsay statement of Defendant's father would not be allowed into evidence at trial as it is "violative of the Defendant's 6th Amendment right to confront the witnesses brought against him."[1] This interlocutory appeal follows.

---

[1] Father was deceased when the motion to suppress was heard.

<u>Discussion</u>

The State argues two points on appeal. First, the State argues that the trial court erred in granting Defendant's motion to suppress evidence based on the issue of common authority when the officers had reasonable belief that Father had authority to consent to the search. Second, the State contends that Officer T's testimony regarding the homeowner's consent was offered to show subsequent police conduct, not the truth of the matter asserted, therefore, it is not hearsay and does not violate the Confrontation Clause.

*Standard of Review*

The State is entitled to appeal any order or judgment the substantive effect of which results in the suppression of evidence under section 547.200.3 RSMo. Appellate review of a trial court's motion to suppress is "limited to whether the court's decision is supported by substantial evidence." *State v. Nichols*, 504 S.W.3d 755, 758 (Mo. App. E.D. 2016). At a hearing on a motion to suppress, the State bears the burden to show, by a preponderance of the evidence, that the motion should be overruled. *State v. Lewis*, 17 S.W.3d 168, 170 (Mo. App. E.D. 2000). Our Court considers the record made at the suppression hearing and, when applicable, at trial, and "we review all facts and reasonable inferences therefrom in the light most favorable to the trial court's decision." *Nichols,* 504 S.W.3d at 759. The trial court's ruling will be reversed only if it is clearly erroneous. *State v. Lammers,* 479 S.W.3d 624, 630 (Mo. banc 2016*)*. "The trial court's ruling will be deemed clearly erroneous if, after review of the entire record, [we are] left with the definite and firm impression that a mistake has been made." *Id*. "Our Court gives deference to the trial court's factual findings and credibility determinations, but we review all questions of law *de novo*." *Nichols*, 504 S.W.3d at 759 (citing *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc

1998)). Whether conduct violates the Fourth Amendment is a question of law that this Court reviews *de novo*. *Lammers*, at 479 S.W.3d at 630.

*Point I: Validity of the Consent to Search*

In its first point on appeal, the State argues the trial court erred when predicating the judgment on a lack of actual authority because apparent authority can also be used to prove valid consent for a warrantless search. The State contends that the search of the back bedroom was constitutional because the police officers reasonably believed that Father, the homeowner, had authority to consent to a search of his entire residence.

"The Fourth Amendment of the U.S. Constitution preserves the right of the people to be secure from unreasonable searches and seizures." *State v. Lindsay*, 599 S.W.3d 532, 536 (Mo. App. E.D. 2020). "As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights." *Lewis*, 17 S.W.3d at 170. However, a search conducted with valid consent is constitutionally permitted. *Id*. For consent to be valid it must be voluntary and not induced by fraud or coercion. *Id*.

*Illinois v. Rodriguez* established the standard of reasonableness for conducting a consensual search. "As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment ...warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). "Law enforcement officers may carry out a valid warrantless search based on consent if the officers reasonably believed the person giving consent had authority to do so, regardless of whether the officer's belief is later proved to be erroneous." *Lewis*, 17 S.W.3d at 170.

4

Defendant argues that he was staying in a separate bedroom of the house and thus had a reasonable expectation of privacy in that room. Further, Defendant argues the State failed to meet its burden proving Father had mutual use of the bedroom in order to establish common authority. Defendant relies on *State v. Pinegar*, 583 S.W.2d 217 (Mo. App. W.D. 1979) and *State v. Peterson*, 525 S.W.2d 599 (Mo. App. K.C.D. 1975). In *Pinegar*, the court found that the defendant, who lived with his parents, had a reasonable expectation of privacy in a personal footlocker located in his room. *Pinegar*, 583 S.W.2d at 220. In *Peterson*, the court reversed the defendant's conviction due to a warrantless search of his bedroom, despite parent's consent to the search, because the bedroom was "exclusively" the defendant's. *Peterson*, 525 S.W.2d at 608. However, in *Peterson* the state conceded "exclusivity" at a pretrial motion to suppress hearing and did not contend that the search could be justified as a consensual search. *Id*.

Critically, *Peterson* and *Pinegar* both predate *Rodriguez's* modification of the standard in assessing the validity of consent searches. *Lewis*, 17 S.W.3d at 171. "Missouri cases subsequent to *Rodriguez* have applied the 'reasonableness' test in determining the validity of consent searches." *Id*. Based on *Rodriguez*, the issue is whether it was reasonable for police to conduct a warrantless search of the back bedroom based on Father's consent. A warrantless search is lawful if the third party who provided the consent had either actual or apparent authority. *State v. O'Connor*, 685 S.W.3d 428, 441 (Mo. App. W.D. 2023). "Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *Id*. at 441-42.

We find *State v. Moore* and *State v. Lewis* instructive. In *Moore*, this Court found it was reasonable for officers to search a home based on consent from a third party who officers had

5

regularly seen at the home, who had knowledge of the people within, and who was the only person who responded to their knock. *State v. Moore*, 972 S.W.2d 658, 661 (Mo. App. S.D. 1998); s*ee also Smith* 966 S.W.2d at 8 (holding it was reasonable to search house with girlfriend's consent upon assertions that she helped purchase the property with money from parents, lived at the address with defendant, and was knowledgeable about the property; however, not reasonable to pry open defendant's locked safe located within the house). Additionally, in *Lewis* this Court found that evidence contained in a shoebox in the shared bedroom of a married couple should not be suppressed because the "police's belief that the wife had authority to consent to the search of the shoebox was reasonable." *Lewis*, 17 S.W.3d at 171. In *Lewis* we noted that the State did not present evidence that the wife used the shoebox or had prior access or control over the shoebox, however, it was still reasonable for police to believe that the wife would have authority to consent to a search. *Id*.

Following well-settled law, a question we must consider is whether the State met its burden to show the police officers had a reasonable belief that Father had authority to consent to the search of his entire residence. "What [Defendant] is assured by the Fourth Amendment…is not that no government search…will occur unless he consents; but that no such search will occur that is 'unreasonable.'" *Rodriguez*, 497 U.S. at 183. Giving deference to the trial court's factual findings and credibility determinations and viewing those facts in a light most favorable to Defendant, we are left with a definite and firm impression that a mistake has been made as the trial court did not address reasonableness. We find the officers acted reasonably in believing the homeowner had authority to consent to a search of the back bedroom.

The parties do not dispute the Father's ownership. Both officers had knowledge of Father and testified they knew Father owned the home. The trial court confirmed in its judgment that

Father owned the home at the time of all events described. The parties do not dispute that Defendant was not a joint homeowner. Officer T testified that Defendant specifically said he "does not live there." Father was the person who answered the door and let the officers into his home. Officer T testified that he searched the residence after he had spoken with Father and obtained consent. Officer C's testimony mirrored that of Officer T. Officer C conversed politely with Father in the living room while the search took place. The trial court found both officers' testimony to be credible.

As in *Moore* and *Lewis*, the facts available at the time, and found credible by the trial court, would lead an objectively reasonable officer to believe that Father had authority to consent to a search of his residence, regardless of whether the officer's belief is later proved to be erroneous. *Rodriguez*, 497 U.S. at 186 (elucidating Fourth Amendment requirement met when officers reasonably believe they have obtained valid consent, even if that belief later proved erroneous). As such, the trial court's determination that there was zero evidence is clearly erroneous. We grant Point I.

*Point II: Officer's Testimony Regarding Consent to Search*

In Point II, the State contends that Officer T's testimony regarding Father's consent to search the home was offered to show subsequent police conduct, not the truth of the matter asserted; therefore, it is not hearsay and should not be subjected to a hearsay analysis. Moreover, a statement that is not hearsay does not violate the Confrontation Clause of the Sixth Amendment. Defendant conceded Point II.[2] However, even if not conceded we would find the statement is not hearsay.

---

[2] After the State filed its Appellant's brief, Respondent filed a brief in which he confessed error in Point II of the State's brief. New counsel entered for Respondent then asked to file an amended brief late, which this Court denied. Counsel then filed a "Notice of Withdrawal of Concession of Appellant's Point II in Respondent's Brief" which was

Hearsay is an out of court statement offered to prove the truth of the matter asserted. *State v. Kemp*, 212 S.W.3d 135, 146 (Mo. banc 2007). Hearsay statements are inadmissible unless the statement falls under a recognized exception to the rule against hearsay. *Id.* "Out-of-court statements offered not for the truth of the matter asserted but rather to explain and provide context for subsequent police action are not hearsay and are admissible." *State v. Hollowell*, 643 S.W.3d 329, 337 (Mo. banc 2022). Out-of-court statements admitted to explain subsequent police conduct must only be used for that limited purpose and cannot be used as substantive evidence to prove or establish the truth of the matter asserted. *Id*.

"The Sixth Amendment's Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. *Id*. at 59. However, testimonial statements of witnesses absent from trial are admitted only when the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. *Id*. This applies even to those out-of-court statements that might otherwise be admitted under a hearsay exception. *Id*. If a statement is not offered to prove the truth of the matter asserted, then the defendant's rights under the Confrontation Clause are not implicated. *Id*. at 59 n.9. "The Clause…does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*.

We acknowledge that in *State v. Hollowell* the Missouri Supreme Court found the out of court statements of a non-testifying wife to be inadmissible because "the testimony went beyond explaining subsequent police conduct and directly implicated [defendant] in the charged

ordered taken with the case. Because we provide reasoning in our opinion, we need not address the notice to withdraw concession.

8

offenses."[3] *Hollowell*, 643 S.W.3d at 336. There, an officer testified that wife said her husband, a convicted felon, possessed and frequently used numerous firearms that were stored in a safe in their home. *Id*. at 333. This testimony was the State's "only direct evidence presented regarding the ultimate factual issue – possession and control of the firearms." *Id*. at 338.

The case before us is distinguishable. Here, unlike *Hollowell*, the officer's testimony regarding Father's consent to search his residence does not directly implicate Defendant in the charged offenses of burglary and stealing, the testimony is not offered to prove the ultimate factual issue, and the testimony is not the State's only direct evidence. Officer T did not testify to, nor did Father make, out-of-court statements that directly linked Defendant to the stolen goods. Officer T did not testify to, nor did Father make, statements regarding Defendant's guilt or innocence in the charged offenses. Further, Officer T's testimony regarding Father's consent to search is not the State's only evidence of Defendant's guilt. Here, Defendant was captured on a surveillance video taken during the reported burglary, and the items reported missing from the burglary were found in the residence.

In light of these facts, which were found credible by the trial court, Father's consent to search his residence explains and provides context for the officers' subsequent conduct, and Officer T's testimony regarding Father's consent was limited to that purpose. The testimony of Father's consent to search did not weigh upon the truth of the matter regarding Defendant's charged crimes. *State v. Dees*, 631 S.W.2d 912, 918 (Mo. App. E.D. 1982) (finding testimony that grandfather gave officer permission to enter house and search for defendant did not go to guilt or innocence of the defendant). Statements not offered for the truth of the matter asserted

---

[3] "The State charged Hollowell with 15 counts of unlawfully possessing a firearm – one count for every firearm." *Hollowell*, 643 S.W.3d at 333.

are not hearsay. *Hollowell*, 643 S.W.3d at 337. Therefore, we find the officer's testimony regarding Father's consent to search is not hearsay and is admissible.

Accordingly, the Confrontation Clause of the Sixth Amendment does not bar the use of statements for purposes other than the truth of the matter asserted. *Crawford*, 541 U.S. at 59 n.9. Thus, the admission of the officer's testimony regarding Father's consent would not be violative of Defendant's Sixth Amendment right as found by the trial court. We affirm Point II.[4]

<u>Conclusion</u>

It was reasonable for the police to search the back bedroom of the home based on consent from Father, the homeowner. Additionally, the testimony regarding Father's consent to search was used to show subsequent police conduct and did not weigh on the truth of the matter asserted. Consequently, the State met its burden, and the evidence found in the back bedroom should not have been suppressed. The judgment of the Circuit Court of Franklin County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Angela T. Quigless, J.

James M. Dowd, P.J., and
Cristian M. Stevens, J., concur.

---

[4] All pending motions are denied.