STATE of Missouri, Appellant,

v.

Laura WILLIAMS, Respondent.

No. ED 85402.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 3, 2005.

Anne C. McCartney, St. Louis, MO, for appellant.

Richard D. McNelley, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

### Introduction

The State of Missouri appeals from an Order of the Circuit Court of the City of St. Louis granting Defendant Laura Williams's ("Defendant") motion to suppress two out-of-court statements, one oral and one written, that the State introduced in the criminal case against Defendant. We affirm in part and reverse in part.

Because this is an interlocutory appeal that the State has brought pursuant to Section 547.200.1(3), R.S.Mo.2000, we remand for further proceedings.

### Statement of Facts

Viewed in the light most favorable to the trial court's ruling, the evidence adduced at trial establishes that on June 6, 2003, City of St. Louis police officers Korey Kline and Martinous Walls drove to Defendant's residence at 3760 Gravois to execute a search warrant. While the officers were outside the residence conducting surveillance, Defendant exited the residence with her three-year-old daughter and left in her car. The officers followed Defendant for a couple of blocks before pulling her over. Thereafter, they informed Defendant of the search warrant, handcuffed Defendant pursuant to procedure, placed her and her daughter in the patrol car, and returned to the residence. Three other officers met them there.

Upon entering the residence, the officers placed Defendant on the floor of an interior hallway, still handcuffed. Two adults and two juveniles, including Defendant's son, were in the residence. Police informed them of the search warrant and placed the adults in handcuffs.

In the course of searching Defendant's bedroom, Officer Kline found four prescription bottles made out to other persons containing hydrocodone. Moreover, while searching a hall closet, Officer Walls uncovered a box containing four empty prescription bottles and a fifth bottle containing a red viscous liquid with crushed pills.

At trial, Officer Walls testified that he advised Defendant of what he found in the closet and,

> [a]t that point [Defendant] spontaneously stated that she knows what I'm saying about the bottle and she said that she's not a drug dealer. That she buys the pills basically for a dollar a pill and she mixes them up to get high with them. She says that's what she does. She gets high. She doesn't deal drugs.

Following Defendant's statement, Officer Walls arrested her and advised her of her *Miranda*[1] rights for the first time.

After searching the house for approximately two hours, officers escorted Defendant to a patrol car and transported her to a police station. At the station, Defendant agreed to complete a "warning and waiver form." The form included, among other things, a listing of the *Miranda* warnings. Officer Walls testified at trial that he read Defendant her rights from the form and Defendant acknowledged her understanding of her rights, initialing them line by line. Defendant then proceeded to make and sign the following written statement:

> I, Laura Williams, want to make the following statement. The pills that were found in my house is for my own personal use [sic]. I did not sell any type of drug. I buy peoples [sic] prescription [sic] for a dollar a pill.

Defendant was charged, under Section 195.202, R.S.Mo 2000, with two counts of the class C felony of possession of a controlled substance, hydrocodone and codeine.[2] Prior to trial, Defendant moved to suppress her oral and written statements, denying having made the oral statement

---

1. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that custodial interrogation by police must not occur prior to a suspect being informed of his or her right to counsel and against self-incrimination).

2. While Defendant was also charged with one count of possession of drug paraphernalia, the State elected not to proceed on this charge.

and contending that her written confession was made in response to a promise by Officer Walls that she could go home and get help in a drug treatment program if she admitted to using the pills.

The trial court heard Defendant's motion to suppress prior to trial and initially denied it. However, during the State's case, the trial court reconsidered its earlier ruling on the motion. At a recess, the trial court raised its concerns to counsel that Defendant was not properly Mirandized before making her oral statement to police and requested authority on that issue. Upon further consideration, the trial court entered an order reversing its original denial of Defendant's motion to suppress and granting a mistrial:

> The court finds that under the circumstances, the first oral statement was obtained by the police as the fruit of the functional equivalent of an 'interrogation' which was not preceded by Miranda warnings. The confronting by police of a handcuffed defendant with illegal substances found in the search amounted, in this court's view, to the functional equivalent of an interrogation wherein a reasonable defendant might reasonably feel that they are being interrogated by police regarding the allegation of illegal use of a controlled substance. Since her oral statement was not preceded by Miranda warnings, it should be suppressed. Likewise, the written statement is the fruit of the tainted oral statement and should be suppressed.

> The Court hereby grants a mistrial, on its own motion, absent any fault of either party, as there is no other adequate remedy to guarantee either party a fair trial.

This interlocutory appeal followed.

### Standard of Review

We sustain a trial court's ruling on a motion to suppress unless there is insufficient evidence to support the ruling. *State v. Clemons*, 946 S.W.2d 206, 218 (Mo. banc 1997). In reviewing the sufficiency of the evidence, "we consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Id.* at 218. We will not reverse the trial court's judgment if it is "plausible in light of the record viewed in its entirety;" even where we believe we would have weighed the evidence differently had we been sitting as the trial court. *State v. Thomas*, 989 S.W.2d 605, 606 (Mo.App. E.D.1999) (internal citation omitted). When, however, the issue to be decided involves the constitutional protection against forced self-incrimination, we defer to the trial court's determinations of witness credibility and findings of fact, but consider the court's conclusions of law *de novo*. *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000).

### Discussion

In its sole point on appeal, the State argues that the trial court erred in suppressing Defendant's oral and written statements to police because: (1) Defendant made her oral statement spontaneously, not as a result of an interrogation, and, thus, *Miranda* warnings were unnecessary; and (2) Defendant made her written statement after she had been warned of and waived her *Miranda* rights. Moreover, the State posits that even if we were to find that the trial court properly suppressed Defendant's pre-warning, oral statement, her post-warning, written statement should not have been suppressed because any taint from the oral statement was too attenuated to affect her later written statement. We find that the trial court properly suppressed Defendant's

oral statement, but agree with the State that the trial court improperly suppressed Defendant's written statement.

## A. Oral Statement

The United States Supreme Court has explained that the *Miranda* safeguards apply whenever an individual is: (1) in custody; and (2) subjected to express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Supreme Court defined "the functional equivalent" of questioning as "any words *or actions* on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.*, 446 U.S. at 301, 100 S.Ct. at 1689–90 (emphasis added) (internal footnote omitted). In determining whether police action is the functional equivalent of questioning, the focus is on the perceptions of the suspect, not the intent of the officer. *Id.* The definition of interrogation extends "only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* (emphasis in original).[3]

In this case, it is undisputed that Defendant was in custody at the time she made the oral statement to police. The issue is whether Defendant was "subjected to questioning or its functional equivalent" in violation of *Miranda* at the time she made the oral statement. *See Rhode Island v. Innis*, 446 U.S. at 298–301, 100 S.Ct. at 1688–90. The record before us contains sufficient evidence from which the trial court could have reasonably concluded that Defendant made her oral statement in response to the "functional equivalent" of questioning by Officer Walls.

Here, the evidence before the trial court was that Officer Walls confronted Defendant about the controlled substances he found in her closet as she sat handcuffed on a hallway floor, in the vicinity of, among others, her two children and five police officers. While the trial court found no evidence of coercion, it can be fairly concluded, under the circumstances, that Officer Walls should have known that confronting Defendant about the controlled substances was reasonably likely to elicit an inculpatory or exculpatory response from Defendant and, thus, that Defendant was subjected to the "functional equivalent" of questioning. Moreover, it can be fairly inferred from Defendant's oral statement, as recounted by Officer Walls at trial, that Defendant perceived that Officer Walls was interrogating her about her use of the controlled substances. Indeed, according to Officer Walls's testimony, Defendant, upon being confronted by Officer Walls, stated, *inter alia*, that she knew what he was "saying about the bottle" and that she was not a drug dealer. Accordingly, we find that the trial court did not err in suppressing Defendant's oral statement.

## B. Written Statement

Having determined that the trial court properly suppressed Defendant's first, pre-warning statement, we now turn to whether the trial court properly suppressed Defendant's second, post-warning statement as the product of the invalid first statement.[4]

---

3. The Supreme Court noted in its opinion that: "[b]y 'incriminating response' we refer to any response—whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial." *Rhode Island v. Innis*,

446 U.S. at 302 n. 5, 100 S.Ct. at 1690 n. 5 (emphasis in original).

4. Notably, Defendant denies even making the initial oral statement and does not claim that

In support of its contention that Defendant's written statement is admissible, the State relies on *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), which held that a suspect who has answered unwarned, uncoerced questions may validly waive his rights and provide admissible statements after being informed of the *Miranda* warnings. In response, Defendant directs our attention to *Missouri v. Seibert,* —— U.S. ——, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004),[5] which clarified *Elstad* and declared, in a plurality opinion, that *Miranda* warnings delivered mid-questioning, and after an unwarned confession had been obtained, could not effectively accomplish their purpose, rendering the post-warning statements inadmissible. Because we agree with the State that this case is more like *Elstad* than *Seibert,* we find that the trial court erred in suppressing Defendant's written statement.

In *Seibert,* the Supreme Court disapproved of a two-step interrogation technique where police deliberately failed to inform a murder suspect of the *Miranda* warnings in an attempt to elicit a confession. Upon eliciting a confession, the police offered the suspect a twenty-minute coffee break and then successfully sought to have the suspect repeat the confession in a second, post-warning interview. The Court presented the controlling question as whether "a reasonable person in the suspect's shoes" would have understood the *Miranda* warnings as presenting "a genuine choice whether to follow up on the

earlier admission." *Seibert,* 124 S.Ct at 2612 (plurality opinion).

The *Seibert* Court distinguished the situation presented in *Elstad.* In *Elstad,* the suspect made an initial incriminating statement in his home. Police then transported the suspect to the police station, where he received the *Miranda* warnings and admitted his involvement in a crime. *Elstad,* 470 U.S. at 301, 105 S.Ct. at 1289. In contrasting the two cases, the Supreme Court listed a series of factors bearing on whether *Miranda* warnings delivered mid-questioning could be effective enough to achieve their purpose. These factors included:

> the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*Seibert,* 124 S.Ct. at 2612. The Supreme Court went on to explain that, in *Elstad,*

> it was not unreasonable to see the occasion for questioning at the station house as presenting a markedly different experience from the short conversation at home; since a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, the *Miranda* warnings could have made sense as present-

her written statement was the product of the oral statement. Rather, in the pretrial suppression hearing, Defendant testified that she made the written statement in response to a promise by Officer Walls that she could go home and get drug treatment if she admitted to using the pills. The trial court was not persuaded by Defendant's attempt to suggest that her written statement was coerced. We

defer to the trial court's determination of witness credibility and findings of fact. *State v. Werner,* 9 S.W.3d at 595.

5. The parties both cite to *State v. Seibert,* 93 S.W.3d 700 (Mo. banc 2002). In this opinion, we focus on the United States Supreme Court's decision in *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), which affirms *State v. Seibert.*

ing a genuine choice whether to follow up on the earlier admission.

*Id.*

Considering the record before us, we find that the present case is more factually analogous to *Elstad* than to *Seibert.* As with the situation in *Elstad,* a reasonable person in Defendant's shoes could have viewed the questioning at the police station as a new and distinct experience from the earlier, pre-warning questioning at her residence and, thus, Defendant could have viewed the *Miranda* warnings at her home and again at the police station as presenting her with a meaningful choice whether to follow up on her initial admission. *See Seibert,* 124 S.Ct. at 2612. Defendant made the written statement over two hours after the initial statement, considerably longer than the twenty-minute delay that separated the interrogation sessions criticized in *Seibert.* Moreover, unlike in *Seibert,* the trial court did not find, and the record does not reveal, that Officer Walls used a multi-stage interrogation strategy "adapted to undermine the *Miranda* warnings." *Id.* Additionally, we note the factors supporting the trial court's suppression of Defendant's initial oral statement as the product of the functional equivalent of questioning, including the presence of her children and numerous other officers at the house, were not present at the police station.

Accordingly, we find that the trial court erred in suppressing Defendant's post-warning, written statement.

### Conclusion

The trial court's ruling suppressing Defendant's initial, oral statement made to police without *Miranda* warnings is affirmed. However, we reverse the trial court's ruling suppressing Defendant's subsequent, post-warning written statement. The cause is remanded for further proceedings.

KATHIANNE KNAUP CRANE, J., Concurs.

ROBERT G. DOWD, JR., J., Concurs.