MARY W. SHEFFIELD, P.J.
Following a jury trial, Jason McClurg ("Defendant") was convicted of murder in the first degree and escape from confinement. See §§ 565.020, 575.210.[1] The trial court sentenced him to consecutive terms of life without the possibility of parole and three years' imprisonment. Defendant raises one point on appeal, arguing that the trial court abused its discretion in denying his motion for a continuance. We affirm Defendant's convictions and sentences, but remand to correct a clerical error in the trial court's written judgment.
Relevant Facts and Procedural Background
Defendant does not contest the sufficiency of the evidence to support his convictions. The facts recited hereafter are limited to those necessary to resolve Defendant's point, and we glean those facts by viewing the evidence in the light most favorable to the finding of guilt. State v. Taylor , 298 S.W.3d 482, 491 (Mo. banc 2009).
Less than two months after giving birth to a baby boy, Stephanie McClurg ("Victim") was found dead, alone in her home. During the investigation of Victim's death, multiple parties reported suspicions that she had been poisoned by Defendant, her husband. Defendant had been having an affair, and his mistress informed police of a plan Defendant had recently conveyed to *80 her: he would put pills into some Kool-Aid, and convince Victim to drink it by telling her that their older son had made it especially for her.
An incident occurred on the day before Victim's death, in which Defendant told Victim to consume an entire water bottle containing a drink that their son supposedly had mixed for her. Victim went limp, and became very pale and unresponsive. She recovered, and returned home with Defendant. Defendant told his mistress that his plan did not work and had only caused Victim to have a seizure, but that he would likely try again. Defendant called Victim's mother the next day to tell her that Victim had been dead for "quite awhile."
Testing was conducted on the water bottle from which Defendant had ordered Victim to drink. The results showed the presence of the prescription drugs propranolol and cyclobenzaprine. Both drugs were prescribed to Defendant, but not to Victim. A bottle of cyclobenzaprine bearing Defendant's name on the label was seized from his home. Cyclobenzaprine is a potent muscle relaxer, and both cyclobenzaprine and propranolol can cause seizures when ingested in high doses. A search of Defendant's phone revealed recent internet searches on how to make a death look like an accident or a suicide, and on how seizures can cause death.
Toxicology reports showed that Victim's blood contained a toxic level of cyclobenzaprine and non-lethal levels of propranolol. The medical examiner and forensic pathologist who testified in the case, Dr. Keith Norton ("Dr. Norton"), described the amount of cyclobenzaprine as well above the prescribed level and "at the low end of the range that can kill you." He conducted Victim's autopsy, and determined that the cause of death was the high level of cyclobenzaprine in her blood, which led to an irregular heartbeat. Dr. Norton further determined that the manner of death was homicide.
Defendant was arrested and charged with first-degree murder. He subsequently escaped from the Shannon County jail, but was retaken into confinement.
The contested motion for a continuance was filed and renewed, both orally and in writing, in response to the gradual disclosures of amended calculations that Dr. Norton made in Victim's autopsy report.[2] The proceedings relevant to this point, leading up to Defendant's eventual trial on July 25, 2016, progressed as follows.
Defendant filed a request for discovery pursuant to Rule 25.03 on October 2, 2014.[3] He requested that within ten days and throughout the duration of the case, the State turn over, inter alia , "[a]ny reports or statements of experts made in connection with this case[.]" The State endorsed Dr. Norton as an expert witness on December 15, 2014, and disclosed that it intended to call him to testify as to his findings regarding the cause of Victim's death. The State promptly turned over to defense counsel the basic autopsy report Dr. Norton had created. In this original autopsy report, the cause of death was determined by testing Victim's blood.
On March 16, 2016, Dr. Norton amended the autopsy report. The amended report added a one-page document ("the Addendum") which detailed his calculations of *81 the level of prescription drugs in Victim's body. The Addendum supplemented the original autopsy report through the inclusion of additional toxicology testing that determined the levels of drugs in Victim's stomach. The amended report, with the gastric content calculations, was turned over to defense counsel on March 21, 2016 (approximately four months before trial).
On March 18, 2016, Dr. Norton revised the Addendum to the original autopsy report. This revision ("Revised A") simply corrected a clerical error in the Addendum. The number indicating the low-end of the range of cyclobenzaprine in Victim's body, "0.929," should have been typed as "0.92." In the detailed calculations above the error, the number is properly listed as "0.92." Revised A was disclosed to Defendant on May 4, 2016 (more than two months before trial).
On March 29, 2016, Dr. Norton again revised the Addendum to the original autopsy report. This revision ("Revised B") maintained the change from Revised A, and also slightly changed the number indicating the high-end of the range of cyclobenzaprine in Victim's body. This revision appears to have been necessary due to a mathematical error Dr. Norton previously made in calculating the figure. Revised B changed the high-end level of cyclobenzaprine from 9.2 grams to 9.4 grams. Dr. Norton's drug calculations appearing in Revised B are the final version eventually referenced at trial. Defendant did not receive Revised B until July 5, 2016 (approximately three weeks before trial).
Defendant filed two written motions for continuance in response to the amended calculations in Dr. Norton's autopsy report. The written motions were filed on July 11 and 21, 2016. The motions were taken up by the trial court and argued extensively in pretrial hearings. Defense counsel continuously claimed that she would not have sufficient time to investigate Dr. Norton's amended calculations before trial. The State responded that Dr. Norton's ultimate conclusion had been the same since he was endorsed as a witness, the drug calculations regarding the cause of death did not change significantly, and that according to the doctor himself, the testing of Victim's gastric contents was not material to determining the cause of death. The July 21 motion additionally noted that defense counsel had consulted an expert about the revised gastric content calculations.
In the first hearing addressing the ongoing motion, the trial court withheld making a ruling. During the next hearing, the court declined to continue the trial date, but granted the remedy and sanction of ordering that the State could not present evidence from Dr. Norton regarding the testing of Victim's gastric contents. In the final motion hearing before trial, the court again denied the request for a continuance, reasoning that Defendant had not received significant new information that was not either provided to him previously or prohibited by court order from being used by the prosecution.
Defendant was tried by a jury on July 25-28, 2016, and he was found guilty as charged. Defense counsel preserved the continuance issue in a timely motion for new trial, which was denied. The trial court sentenced Defendant to life imprisonment without the possibility of parole for the murder, and a consecutive three-year term for the escape from confinement. This appeal followed.
Analysis
Defendant's point on appeal asserts:
The trial court abused its discretion in denying [Defendant's] motion for a continuance to allow defense counsel the *82 time necessary to consult with an independent expert about the amended calculations in Dr. Norton's report that was received shortly before trial because that ruling was in violation of [Defendant's] rights to due process of law, a fair trial and to present a defense as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution as well as Article I, Sections 10 and 18(a) of the Missouri Constitution, in that Dr. Norton was a critical witness for the state due to the fact that he was the only witness to testify that [Victim] was killed by the amount of [c]yclobenzaprine in her system. His calculations were, therefore, critically important and defense counsel should have been granted the time necessary to properly discuss Dr. Norton's calculations with an independent witness to evaluate their accuracy and potentially present evidence to contradict Dr. Norton's ultimate conclusion.
It is well-established that the decision to grant or deny a motion for a continuance is committed to the sound discretion of the trial court. State v. Kinder , 942 S.W.2d 313, 322 (Mo. banc 1996). On appeal, this Court's review is limited to whether the trial court abused that discretion. State v. Jones , 479 S.W.3d 100, 111 (Mo. banc 2016). Where, as in this case, a claim of error arises out of the trial court's refusal to grant a continuance as a remedy for an alleged discovery violation by the State, appellate courts "will intervene only where a defendant demonstrates that the State's failure to timely disclose results in fundamental unfairness." State v. Cartwright , 17 S.W.3d 149, 154 (Mo. App. E.D. 2000). Moreover, reversal is warranted only upon a "very strong showing" that the trial court abused its discretion and prejudice resulted from the denial of the motion. Jones , 479 S.W.3d at 111 (quoting State v. Edwards , 116 S.W.3d 511, 535 (Mo. banc 2003) ). "A court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Deason , 240 S.W.3d 767, 771 (Mo. App. S.D. 2007) (quoting State v. Wolf , 91 S.W.3d 636, 645 (Mo. App. W.D. 2002) ).
Neither an abuse of discretion nor prejudice to Defendant is shown here. Dr. Norton was disclosed as the expert witness early in the discovery process, and his reports were provided to defense counsel as they were received by the prosecutor, in compliance with discovery rules. Defense counsel had adequate time to prepare for trial, as Dr. Norton's testimony regarding his ultimate conclusion never significantly changed. The final amended report, Revised B, was received by defense counsel three weeks before trial, during which time Defendant concedes he consulted an independent expert.
Defendant's brief offers only bare allegations of prejudice as a result of the State's late disclosures. "[T]he party requesting the continuance bear[s] the burden of showing prejudice." State v. Schaal , 806 S.W.2d 659, 666 (Mo. banc 1991). "A defendant is prejudiced from the denial of a motion for a continuance if granting the continuance could have affected the outcome of the case." State v. Brown , 517 S.W.3d 617, 631 (Mo. App. E.D. 2017). Defense counsel consulted with their own expert regarding the amended calculations in Dr. Norton's report, and could have presented expert testimony at trial, but apparently chose not to do so.
Defendant does not point to any specific information further investigation or preparation would have uncovered that would have benefitted Defendant in his defense at trial. Defendant makes no *83 showing that he was prejudiced, and "does not explain how more time to prepare would have made his defense more effective. He only states that more time would have helped. We cannot grant relief without a showing that [the defendant] was prejudiced." State v. Slagle , 206 S.W.3d 404, 409 (Mo. App. W.D. 2006). Because Defendant has not made the "very strong showing" of abuse and resulting prejudice that is essential to obtain relief on appeal, his point is denied.[4]
While the foregoing discussion disposes of Defendant's point on appeal, there is a matter which requires further attention. We note a clerical error in the trial court's written judgment, which mistakenly denominates the conviction on count two as "Escape or Attempted Escape From Custody While Under Arrest for Felony (Felony D RSMo: 575.200 )." The record clearly shows that Defendant was in fact charged with, and the jury found him guilty of, escape from confinement , a similar yet distinct class D felony, defined under § 575.210. The First Amended Information, jury instructions, and the trial court's oral announcement of the verdicts and pronouncement of sentences describe the second charge as escape from confinement. "Failure to accurately record [Defendant]'s conviction was a clerical error correctable nunc pro tunc. " State v. Henderson , 468 S.W.3d 422, 426 (Mo. App. S.D. 2015). Remand is the appropriate remedy. Id.
Conclusion
The trial court's judgment is affirmed. We remand with instructions solely to correct the written judgment to reflect that Defendant was convicted of escape from confinement, not escape from custody.
GARY W. LYNCH, J.-CONCURS
DON E. BURRELL, J.-CONCURS

All references to Section 575.210 are to RSMo Cum. Supp. (2009). All remaining statutory references are to RSMo (2000).

Defendant filed additional motions for continuance which are not discussed herein because they were not triggered by amended calculations in Dr. Norton's report, and therefore, per Defendant's point, are not at issue on appeal.

Rule references are to Missouri Court Rules (2017).

Even if a discovery violation did occur due to the relatively late disclosure of Revised B, the trial court has broad discretion to control discovery, and "[t]his discretion extends to the trial court's choice of remedies in response to the non-disclosure of evidence or witnesses during discovery." Wilkerson v. Prelutsky , 943 S.W.2d 643, 647-48 (Mo. banc 1997). Upon deliberation, the trial court in this case mitigated any effects of late disclosure by prohibiting the State from using evidence of Victim's gastric contents in its case-in-chief.