ROBERT G. DOWD, JR., Judge
Michael Dierks ("Defendant") appeals from the judgment entered after a jury trial on his convictions for possession of a controlled substance and possession of drug paraphernalia. He challenges the trial court's denial of his pre-trial motions for continuance and his motion to suppress. We affirm.
On September 8, 2015, the police found a case containing methamphetamine and drug paraphernalia in the tent Defendant was sharing with Angela Akers, Defendant's fianceé at the time, while they were camping in a state park. The State charged Defendant, and the court appointed a public defender. In April 2017, the court set the case for trial on July 31, 2017. On July 27, 2017-the Thursday before the Monday trial setting-the public defender filed a motion to continue the trial alleging that Akers was a material witness but "cannot be located." In that *357 motion, the public defender also informed the court that Defendant planned to hire private counsel that afternoon. That evening, private counsel entered his appearance for Defendant and filed a motion to continue. In that motion, counsel alleged he had just been retained that day, Thursday, did not have any discovery and would likely not be able to provide proper representation at trial if it were to occur on Monday. After a hearing, the trial court granted the public defender leave to withdraw as counsel for Defendant, but denied the continuance requests.
The trial proceeded on July 31. That morning, new counsel filed a motion to suppress a statement Defendant made when the police found the case in his tent. In that statement, Defendant acknowledged that he knew the case was in the tent; he argued the statement was inadmissible because it was made during a custodial interrogation without being Mirandized. See Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court denied that motion after an evidentiary hearing. The jury ultimately found Defendant guilty of felony possession of methamphetamine and misdemeanor use of drug paraphernalia. He was later sentenced, as a prior and persistent offender, to fifteen years' imprisonment and thirty days in the county jail to be served concurrently. This appeal follows.
In his first point, Defendant challenges the denial of the motion to continue filed by the public defender based on the inability to locate Akers. In his second point, Defendant challenges the denial of the motion to continue that was filed by private counsel on grounds that he had inadequate time to prepare for trial. The State contends that the first point is not preserved because the alleged error in denying that particular motion for continuance was not raised in the motion for new trial. The motion for new trial referred to the fact that two motions for continuance were filed, but it alleged error only with respect to the "overruling of Defendant's motion for continuance"-singular-and then discussed only the ground asserted in private counsel's motion, namely that counsel "did not have the discovery" and "was unable to properly find, interview, and subpoena witnesses for trial and adequately prepare." Defendant claims this is an "exceedingly technical reading" of the motion for new trial, but requests plain error review in the event we find the error unpreserved.
We need not determine if this point was properly preserved because we find no error under either the plain error or the preserved standard of review, both of which are premised on finding an abuse of discretion. Plain error is found "only if we determine that its ruling was an obvious and clear abuse of discretion, which resulted in manifest injustice or miscarriage of justice to the appellant." State v. Wolf , 91 S.W.3d 636, 644-45 (Mo. App. W.D. 2002). "When properly preserved, a trial court's decision denying a motion for a continuance will be reversed only if there is a strong showing that the trial court abused its discretion and that prejudice resulted from the denial of the motion." State v. Harding , 528 S.W.3d 362, 375-76 (Mo. App. E.D. 2017). An abuse of discretion occurs when the decision is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Id. at 376. We find no abuse of discretion in the denial of either motion to continue.
First, the motion to continue based on the inability to locate Akers was properly denied because it did not comply with Rule 24.10. Under Rule 24.10, an application for continuance due to the absence of a witness must show: (1) the *358 materiality of the evidence sought to be obtained and due diligence on the part of the applicant to obtain the witness; (2) the name and residence of the witness or, if not known, diligence to obtain the same, and facts showing reasonable grounds for belief that the attendance or testimony of such witness will be procured within a reasonable time; (3) the facts that the witness will prove and that there is no other person who could have been present at trial to testify to such facts; and (4) good faith in seeking the continuance for the purpose of obtaining a fair and impartial trial. State v. Jones , 479 S.W.3d 100, 112 (Mo. banc 2016) ; State v. Salter, 250 S.W.3d 705, 712 (Mo. banc 2008) ; State v. Edwards , 116 S.W.3d 511, 535-36 (Mo. banc. 2003). If a continuance is not likely to result in the presence of the witness at trial, then the court is within its discretion to deny the continuance. Edwards , 116 S.W.3d at 535.
Defendant's motion to continue due to Akers's absence provided as follows:
A material witness, Angela Akers, cannot be located. In this matter, methamphetamine was found inside of a black bag located in a tent shared by Ms. Akers and [Defendant]. This is a constructive possession case and it is essential to have Ms. Akers testify at trial. She was the only other person in the tent with [Defendant] and she made some incriminating statements to law enforcement acknowledging that she knew there was methamphetamine in this black bag. In addition, Ms. Akers currently has three pending felony warrants outstanding. One warrant is relating to a probation violation where the underlying charge is possession of a controlled substance from an incident occurring in April 2014, Cause No. 14SL-CR09348-01. One warrant is relating to a felony possession of a controlled substance case from an incident occurring in April 2015, Cause No. 15SL-CR06488. One warrant is relating to a felony possession of a controlled substance case from an incident occurring in August 2015, Cause No. 16JE-CR02054. The controlled substance involved in all three of these matters is methamphetamine, the same controlled substance involved in the charges against [Defendant]. It is material and necessary to have Ms. Akers testify in the trial against [Defendant].
Elsewhere in the motion, Defendant alleged that the motion was not made to vex or harass the court. Defendant argues this motion substantially complied with Rule 24.10. We disagree.
Read broadly, the above assertion may suffice to show the facts Akers's testimony would establish, that no one else could provide that evidence and that her testimony would be material. But no matter how generously we read this motion, we find nothing whatsoever about past, present or future efforts to procure Akers's presence at trial beyond the statement that she "cannot be located." The motion does not demonstrate Defendant's due diligence in trying to find Akers. There is no information in the motion about Akers's residence or what efforts were made to obtain that information. The motion provides no facts showing a reasonable belief that Akers's attendance could be procured in a reasonable time. In short, there is nothing in this motion to demonstrate that granting the continuance would likely result in Akers's presence. Defendant's suggestion that the references to her outstanding warrants shows "the ease with which Akers could be found" mischaracterizes the motion. The warrants were included in the motion only to show that Akers had the methamphetamine possession charges underlying those warrants and demonstrate her materiality, not for the *359 purpose of demonstrating how to procure her attendance at trial.
Defendant's motion did not comply-in form or substance-with Rule 24.10, and he wholly failed to demonstrate that continuing the trial for a reasonable time was likely to result in the presence of Akers at trial. Therefore, it was not an abuse of discretion to deny that motion for continuance. See id. at 536. Point I is denied.
We also find that denying the motion to continue filed by private counsel based on his allegedly inadequate amount of time to prepare for trial was not an abuse of discretion. Defendant argues that the court erred because counsel did not have enough time to prepare a defense to these serious charges, which implicated Defendant's constitutional rights. "[T]he implication of a defendant's constitutional rights, the seriousness of the offense charged, the nature of any potential defense defendant claims he was unable to prepare for and present at trial, and whether counsel had ample opportunity to prepare for trial" are factors for us to consider. State v. Bowens , 550 S.W.3d 84, 105 (Mo. App. E.D. 2018). But a trial court does not abuse its discretion by denying a motion for a continuance based on counsel's lack of an ample opportunity to prepare for trial when the defendant's "own actions in changing attorneys shortly before trial created the complained-of situation." Id. at 106. Here, Defendant had been aware since April 2017 that the case was set for trial on July 31, but he did not retain private counsel until July 27, over two months after the trial date had been set and just four days before the trial was to begin. Defendant agreed at oral argument that it was his decision to hire new counsel just days before trial. Because the complaint of inadequate time for newly hired counsel to prepare rests squarely on Defendant's shoulders, it was not an abuse its discretion to deny his request for a continuance. See id. ; see also State v. Windle , 615 S.W.2d 563, 564 (Mo. App. S.D. 1981). The cases Defendant cites in support of this point are distinguishable because there is no indication in either of those cases that the defendant was in any way responsible for the last minute change of attorney days before trial. See State v. Jackson , 344 Mo. 1055, 130 S.W.2d 595 (Mo. 1939) ; State v. Lewis , 1880 WL 141 (Mo. App. 1880).
Moreover, Defendant has failed to meet his burden of showing prejudice from the denial of this motion for continuance. Defendant was required to make a strong showing of prejudice by pointing out how granting the continuance could have affected the outcome of the case. See State v. McClurg , 543 S.W.3d 78, 82 (Mo. App. S.D. 2018). His brief offers only bare and conclusory allegations of prejudice, arguing that it is "obvious" from the record that counsel did not have a clear theory of defense and that having "mere days" to prepare for trial was "undoubtedly prejudicial."[1] Defendant claims generally that *360 extra days or weeks would have allowed counsel "to become familiar enough with this case to secure evidence and mount a defense" but does not claim what the evidence or that defense would have been. When the defendant cannot point to "specific information further investigation or preparation would have uncovered that would have benefitted ... his defense at trial" and "does not explain how more time to prepare would have made his defense more effective," then he has not demonstrated prejudice. Id. at 82-83 ; see also State v. Slagle , 206 S.W.3d 404, 409 (Mo. App. W.D. 2006).
Defendant's insistence that even a "cursory review" of the transcript reveals counsel's failure to present a coherent defense is belied by our careful review of the record in this case. It appears to this Court that counsel was quite well-prepared despite having been hired only a few days earlier and that he presented a coherent defense. At the pre-trial conference on the morning of trial, private counsel filed a motion to suppress and a motion in limine. The contents of those motions and the transcript of the arguments thereon demonstrate that counsel had a clear understanding of facts of the case and a thorough knowledge of the legal theories supporting his motions. The theory of defense was that Defendant did not know the case was in the tent, and certainly did not know that the case contained drugs and paraphernalia. Counsel began introducing this defense during voir dire by actively questioning jurors about the idea that a person cannot exercise control over, and therefore possess, something that he does not know exists. Counsel continued with this theme in his opening statement by arguing that there would be evidence of what some people possessed, but that the evidence would show that Defendant was "just there." During cross-examination of the detectives, counsel elicited testimony showing that they did not know who the case belonged to and that Defendant admitted at most that he knew the case was in the tent, but not that he knew what was inside the case. Counsel also put Defendant on the stand to testify that he had no knowledge of the case or its contents. Counsel then argued in closing that one cannot be held accountable for the possessions of others and that the evidence showed the case belonged to Akers, not Defendant.
Defendant was responsible for the last-minute decision to change attorneys resulting in the allegedly inadequate time for new counsel to prepare, and he has failed to establish that a continuance could have affected the outcome of the case. Therefore, it was not an abuse of discretion to deny this motion for continuance. Point II is denied.
In his third point on appeal, Defendant argues the trial court clearly erred in denying his motion to suppress the statement in which he admits that he knew the case they found was in his tent. He argues that admitting this statement was a violation of his Fifth Amendment right against forced self-incrimination because he was in custody at the time and, although the police asked no express questions, they engaged in conduct that was the functional equivalent of questioning without being Mirandized. We disagree.
At the hearing on the motion to suppress, Detective Thompson testified that he and Detective Gillam arrived at the campground and made contact with Defendant and Akers while they were in their car, which was parked at their campsite. The detectives told them they were "investigating a call for possible narcotics activity going on in the park." Akers and Defendant got out of the car and gave the detectives their identification. It was discovered *361 that Defendant had an active warrant for his arrest, at which point he was detained and was not free to leave.[2] The detectives searched the car and Akers's purse with consent and then got consent to search the tent Defendant and Akers shared. Detective Gillam stayed with Akers and Defendant at the car while Detective Thompson searched the tent. Detective Thompson found a case containing methamphetamine and paraphernalia on the floor of the tent.
Q: Did you exit the tent at that point once you had the case?
A: Yeah. At that time I closed it back up, walked back up to the-where everybody else was at. As I'm walking up there I unzipped it, just opened it up to show Detective Gillam basically. At that time Angela [Akers] looked at [Detective Gillam] and said, yeah, I knew that was in there. I told [Defendant] to get rid of it.
Q: Okay. Did [Defendant] respond in any way to her?
A: He said he knew it was there, but he just didn't get rid of it.
(emphasis added). Detective Thompson testified that Defendant made that statement to all of them standing there, but that no one had asked Defendant anything specifically. On cross-examination, Detective Thompson was asked if when he showed them the case he found in the tent he was "making the assertion, like, here, this is what I found." Detective Thompson answered: "That's correct. I showed Detective Gillam in front of them what I had located, yes." (emphasis added). He agreed that Akers and Defendant were both considered suspects at the time the tent was searched and that ordinarily, depending on the event, suspects are kept segregated. No other witnesses testified at the hearing, and the motion was denied.
Detective Thompson testified similarly at trial. When asked to describe what happened when he found the case in the tent, he said:
A: I found nothing else in the tent at that time. I walked out with it. Detective Gillam had Ms. Akers and [Defendant] up by their vehicle. I approached up there, looked at [Detective] Gillam. At that time, I hadn't said anything. I opened it up and showed [Detective Gillam] what I had located. As I showed it to [the detective], Angela [Akers] said, "I knew that was in there. I told him to get rid of it." And they pretty much started bickering between each other, and [Defendant] said, "I know I was supposed to, but I didn't."
* * * *
Q: So [Defendant] replied to Angela [Akers] , "Yes, I knew. I know that was in there. I meant to get rid of it."
A: Yes.
(emphasis added). Detective Gillam also testified at trial about what happened when Detective Thompson approached with the black case:
*362 Q: Okay. When he exited with that case and walked up next to you and [Defendant] and Ms. Akers, do you recall anything being said at that time by Ms. Akers?
A: Ms. Akers said that it belonged to [Defendant]. She knew it was in there and that it belonged to [Defendant].
Q: Did [Defendant] respond to her to what she had said?
A: Yes. He admitted it was his and that he had meant to throw it away.
(emphasis added).
Our review of the trial court's ruling on a motion to suppress is limited to whether the ruling is supported by substantial evidence, and it will be reversed only if it is clearly erroneous. State v. Byers , 551 S.W.3d 661, 669 (Mo. App. E.D. 2018). We consider the evidence presented at the suppression hearing and at trial to determine whether there is substantial evidence in the record. State v. Perry , 548 S.W.3d 292, 297 (Mo. banc 2018). We view all facts and reasonable inferences therefrom favorably to the ruling, while contrary evidence and inferences are disregarded. Id. Where, as here, the trial court made no factual findings, we presume the court found the facts in accordance with its decision and may affirm "under any reasonable theory supported by the evidence." State v. Galen , 554 S.W.3d 550, 553 (Mo. App. E.D. 2018). But whether the Fifth Amendment right against self-incrimination has been violated is a question of law that we review de novo. See generally State v. Lammers , 479 S.W.3d 624, 630 (Mo. banc 2016).
Defendant was in custody and was not Mirandized at the time he made the statement he sought to suppress, so the only question is whether the statement was elicited during an interrogation. The Miranda safeguards only apply when a person is in custody and the statement is the product of police interrogation; they do not apply to volunteered statements made freely and not as a result of police interrogation. Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Police interrogation refers to express questioning or its "functional equivalent," including any words or actions by a law enforcement officer that he "should have known were reasonably likely to elicit an incriminating response." Id. at 301, 100 S.Ct. 1682 ; see also State v. Nichols , 504 S.W.3d 755, 760-61 (Mo. App. E.D. 2016). The primary focus in this analysis is on the perceptions of the suspect, not the intent of the police. Nichols , 504 S.W.3d at 761. Nevertheless, it is only an interrogation if the police "should have known" their conduct was likely to elicit a response-whether inculpatory or exculpatory-that the prosecution may seek to use at trial. Id. ; see also Innis , 446 U.S. at 302 n.5, 100 S.Ct. 1682. In other words, we will "not hold police accountable for the unforeseeable results of their words or actions." State v. Bell , 488 S.W.3d 228, 242 (Mo. App. E.D. 2016).
Defendant claims that the circumstances here resemble those in State v. Williams , in which it was held that directly confronting a handcuffed defendant with the drugs the police had found during a search of her home was the functional equivalent of questioning. 163 S.W.3d 522, 526 (Mo. App. E.D. 2005). There, the police had a search warrant for the defendant's home, which they executed while the defendant was handcuffed and sitting on the floor in her hallway in the vicinity of others. Id. at 524. An officer found prescription bottles, some empty and one containing a red liquid with crushed pills, in the defendant's closet. Id. The officer testified that he "advised" the defendant of what he found in the closet and she "spontaneously stated that she knows what I'm saying about the bottle and she's not a drug dealer." Id. The trial court suppressed that statement, and the ruling was affirmed on appeal:
*363 Here, the evidence before the trial court was that Officer Walls confronted Defendant about the controlled substances he found in her closet as she sat handcuffed on a hallway floor, in the vicinity of, among others, her two children and five police officers. While the trial court found no evidence of coercion, it can be fairly concluded, under the circumstances, that Officer Walls should have known that confronting Defendant about the controlled substances was reasonably likely to elicit an inculpatory or exculpatory response from Defendant and, thus, that Defendant was subjected to the "functional equivalent" of questioning. Moreover, it can be fairly inferred from Defendant's oral statement, as recounted by Officer Walls at trial, that Defendant perceived that Officer Walls was interrogating her about her use of the controlled substances. Indeed, according to Officer Walls's testimony, Defendant, upon being confronted by Officer Walls, stated, inter alia, that she knew what he was "saying about the bottle" and that she was not a drug dealer. Accordingly, we find that the trial court did not err in suppressing Defendant's oral statement.
Id. at 526 (emphasis added).
Here, Defendant was not directly confronted with anything and did not perceive he was being interrogated by the detectives. Although Detective Thompson approached Akers, Defendant and Detective Gillam as a group, he showed the case only to the detective. Neither Defendant nor Akers-both considered suspects at the time-were confronted directly with the evidence found in their tent. This distinguishes the circumstances from those in Williams , where the officer went directly to the defendant and told her he found drugs in her closet. That Detective Thompson did not say anything here is not the point; what is dispositive it that his conduct was not directed at Defendant or Akers. Therefore, even if the act of showing the case to the other detective was the demonstrative equivalent of saying "this is what I found," that assertion was made only to the other detective. If a demonstrative assertion of this nature was made directly to a suspect in custody, we might reach a different conclusion. In other words, if the detective had walked directly up to and showed Defendant the case of drugs and paraphernalia he found in Defendant's tent-even if the detective said nothing-we might fairly say that the detective should have known that conduct was likely to elicit an incriminating response. The State agreed at oral argument that scenario would be the functional equivalent of questioning. Such a confrontation is likely to be perceived by the suspect as a demand to explain the incriminating evidence found on his premises. But here the detective merely walked out of the tent and silently showed his partner what had been found and that conduct cannot be construed as a demand for an explanation from anyone, but simply an informative assertion to his partner. As a result, we cannot say that the detective should have known the suspects who were standing nearby were reasonably likely to make incriminating statements. Moreover, it was particularly unforeseeable that Detective Thompson's conduct would result first in Akers volunteering to Detective Gillam that Defendant was supposed to get rid of the case and then in Defendant making a statement in response to Akers.[3]
The fact that Defendant's statement was made in response to Akers's statement also distinguishes this case from Williams. In Williams , the defendant's *364 statement indicated she believed she was being interrogated about the evidence she was confronted with, whereas here it cannot be fairly inferred from Defendant's statement that he perceived the detectives were interrogating him. Defendant spoke up only after Akers spoke, and what he said was entirely and exclusively responsive to Akers's statement , even if it was directed at everyone standing there. Akers admitted knowing the case was there and said she told Defendant to get rid of it, and he agreed that he was supposed to get rid of it but just did not do so. This statement was neither prompted by Detective Thompson's showing the case to Detective Gillam, nor was the content of Defendant's statement a response to the demonstrative assertion that the case was found in the tent. Defendant's statement indicates that he perceived the need to respond to what Akers said, not to what the detectives did. Questions posed by others in the presence of the police do not constitute custodial interrogation. See State v. Payne , 639 S.W.2d 597, 600 (Mo. banc 1982).
Akers's statement and Defendant's statement in response to her statement were not the product of police interrogation, but an unforeseen result of the detective's act of showing his partner what was found in the tent. Because there was no interrogation, Defendant's statement was voluntary and admissible. There is substantial evidence to support the trial court's ruling, and it was not clear error to deny the motion to suppress Defendant's statement in this case. Point III is denied.
The judgment is affirmed.
Philip M. Hess, P.J. and Mary K. Hoff, J., concur.

In his opening brief, Defendant says counsel had only "two days-Saturday and Sunday" to prepare for trial, suggesting counsel could not have begun preparations until after the motion to continue was denied on Friday. In his reply brief, Defendant asserts counsel had only "two business days"-the Thursday he was hired and the next day Friday-to prepare for trial, suggesting counsel could not have prepared for trial over the weekend. Of course, in reality, counsel had from the moment he was hired on Thursday through the weekend and up until the moment trial began Monday morning to prepare for this trial. Moreover, counsel also represented one of the other campers who was with Defendant and Akers on the day in question. Depending on when that co-defendant hired him, which is unclear from the record, counsel may have already been at least somewhat familiar with the facts in this case when Defendant hired him.

Defendant insists that he was in handcuffs at the time, which the State correctly points out is not supported by the record. Though he was asked if Defendant was cuffed, Detective Thompson's answers indicated only that Defendant was detained and left standing at the vehicle with Detective Gillam:
Q. Okay. Did you take him-well, did you cuff him at that point?
A. Once I found out that he had a warrant, based on the situation, I went ahead and detained him.
Q. Okay. And so-but did you just leave him standing there by the vehicle?
A. Yes. Just left him standing there behind their vehicle.
Nevertheless, the State does not contest that Defendant was in custody at this point, and we assume for purposes of our analysis that he was in custody.

Defendant points out that failing to segregate the suspects while the detectives searched the tent was a departure from standard procedure, but he fails to explain how this allegedly "unorthodox" circumstance impacts our analysis.