

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JAMIE SNETHEN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD87187 |
| | ) | |
| MISSOURI STATE BOARD OF | ) | Opinion filed: February 25, 2025 |
| NURSING, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**HONORABLE COTTON WALKER, JUDGE**

Division One: Gary D. Witt, Presiding Judge,
Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

Jamie Snethen appeals the judgment of the Circuit Court of Cole County, which

affirmed an order of the Missouri State Board of Nursing ("Board") imposing additional

discipline on Snethen's nursing license after she violated the terms of her probation. On

appeal, Snethen argues the Board abused its discretion in denying her motion to continue

her probation violation hearing, the Board's decision to impose additional discipline was

not supported by competent and substantial evidence, and the Board's probation conditions

restricting her alcohol consumption violated the Americans with Disabilities Act ("ADA").

For the reasons stated below, we affirm the judgment of the trial court.[1]

## Factual and Procedural Background

Snethen is licensed by the Board as a "licensed practical nurse." Her Missouri nursing license was originally issued in 2004. In 2007, Snethen pleaded guilty to the class A misdemeanor of operating a motor vehicle in a careless and imprudent manner, involving an accident. In 2014, Snethen pleaded guilty to the class C felony of possession of a controlled substance for possessing methamphetamine. In 2015, Snethen pleaded guilty to the federal offense of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, for which she was sentenced to serve 28 months, followed by five years of probation.

In 2017, Snethen applied to the Board for license renewal. On May 2, 2018, the Board issued an order granting Snethen a probated license in lieu of denial ("2018 order"). The 2018 order placed Snethen's license on probation for a period of five years and required she comply with various terms and conditions, including that she "abstain completely from the personal use or possession of any controlled substance" and "abstain completely from the use or consumption of alcohol in any form, including over the counter products." Snethen was required to contract with a third-party administrator ("TPA") to

---

[1] "On appeal, we review the administrative agency's decision rather than the judgment of the trial court; however, we affirm or reverse the trial court's judgment based upon such review of the administrative decision." *Kubiak v. Mo. State Bd. of Nursing*, 667 S.W.3d 230, 235 (Mo. App. W.D. 2023).

participate in random drug and alcohol screenings, and to check-in daily with the TPA to determine if she was required to submit to a test that day.

Pursuant to the 2018 order, the following constituted violations of Snethen's probation: "Failure to contact or failure to complete the contact to the TPA every day"; "[t]he presence of any alcohol whatsoever in any biological sample . . . regardless of the source"; and, providing a urine sample "with creatinine readings below 20," as such "are deemed diluted specimens and will be considered failed drug and alcohol tests."

Shortly after the Board issued the 2018 order, Snethen met with the Board's Director of Compliance to discuss the terms of her probation. Snethen signed an acknowledgment form stating she fully understood the terms of her probation, which included the requirements that she check in daily with the TPA between 5:00 a.m. and 4:00 p.m.; avoid consuming alcohol-based products, including cough syrup; and follow the stated guidelines to avoid diluted urine specimens.

On November 7, 2022, counsel for the Board filed a probation violation complaint against Snethen, alleging that during the probationary period Snethen failed to check in with the TPA on five occasions, checked in with the TPA "outside the time window" on two occasions, submitted samples showing low creatinine readings on six occasions, and on August 30, 2022, submitted a sample that tested positive for the alcohol metabolites Ethyl Glucuronide (EtG) and Ethyl Sulfate (EtS).

The Board set a probation violation hearing for Wednesday, November 30, 2022. Notice was mailed to Snethen on November 7th. Proof of delivery showed the notice was delivered on November 12th; Snethen contends she received the notice on November 13th.

3

On Friday, November 25th, Snethen sent an email to the Board requesting a continuance, stating she had "contacted multiple lawyers to represent [her] in this hearing and due to the time frame none of them [were] available to represent [her] on the date set by the Board." Snethen listed the names of three attorneys and two law firms she had contacted. She further stated that, "[d]uring this time [her] search for legal counsel was brought to a halt with the passing of [her] grandmother on 11/18/22." Snethen "ask[ed] the board to consider giving [her] more time so that [she] may adequately prepare for this hearing."

Snethen was informed that the Board would review her continuance request at their meeting on Tuesday, November 29th, and if the continuance was not granted, she would need to be prepared to proceed with the scheduled hearing. The Board met on the morning of November 29th and voted to deny Snethen's continuance request. Snethen was informed of the denial that morning.

Snethen appeared at her hearing the following day; she was not represented by counsel. Counsel for the Board admitted into evidence the 2018 order and records from the TPA showing Snethen submitted six samples with creatinine levels under 20 and one sample that tested positive for EtG and EtS, she failed to check in with the TPA on five occasions, and she checked in with the TPA outside the time window on two occasions.

The only witness to testify at the hearing was Snethen. She admitted to violating her probation, and testified that she was "not putting blame on anybody else" and "[t]his [was] [her] fault" and "mistake." Snethen stated that her alcohol-positive urine sample was due to consumption of NyQuil. She testified that she normally purchased alcohol-free NyQuil, but her fiancé purchased regular NyQuil and she consumed it without checking the bottle.

4

Relating to her urine samples with creatinine readings below 20, Snethen testified that her samples may have been diluted because she "drink[s] lots of water on a daily basis" and she had tried a nutritional supplement that was "full of caffeine."

Snethen did not remember why she failed to check in with the TPA on five occasions during 2018 and 2019. On her most recent untimely check-in, which occurred on July 10, 2022, Snethen stated she "had just forgotten about it until right at the very end." She testified she has since set alarms on her phone to remind her to check-in.

Snethen testified that she was not participating in any sobriety programs, but she checked in with her counselor once a month. Snethen stated her sobriety date was August 24, 2015.

On March 9, 2023, the Board issued its Findings of Fact, Conclusions of Law, and Disciplinary Order ("2023 order"). The Board found Snethen violated the terms of her probation by failing to check in with the TPA on five occasions, checking in with the TPA outside the time window on two occasions, submitting samples with low creatinine readings on six occasions, and testing positive for EtG and EtS, metabolites of alcohol. Although the Board "commend[ed] [Snethen's] efforts to better herself and tak[e] responsibility for her actions," it found Snethen's violations "interfered with the Board's efforts to monitor her and have, therefore, affected the Board's ability to protect the public." Having found that Snethen violated her probation, the Board concluded that Snethen's license was subject to further discipline. The Board revoked her current probation and placed her license on a new five-year term of probation, with similar

conditions to her prior probation, including the requirement that Snethen abstain from consuming alcohol.

Snethen (through counsel) filed a petition for judicial review in the trial court. The trial court entered judgment affirming the decision of the Board. Snethen appeals.

**Standard of Review**

"Following judicial review of the Board's disciplinary order, this court examines the decision of the agency, not the judgment of the circuit court." *Walsh v. Mo. State Bd. of Nursing*, 689 S.W.3d 566, 569 (Mo. App. W.D. 2024). "We will affirm the agency's action unless it:"

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

*Jackson v. Mo. State Bd. of Nursing*, 673 S.W.3d 917, 920 (Mo. App. W.D. 2023) (quoting § 536.140.2, RSMo[2]). "[A] court reviewing factual findings by an administrative agency must consider all of the evidence that was before the agency and all of the reasonable inferences that may be drawn from that evidence, including the evidence and inferences

---

[2] All references to the Revised Statutes of Missouri are to RSMo 2016 as currently supplemented.

that the agency rejected in making its findings." *Ferry v. Bd. of Educ. of Jefferson City Pub. Sch. Dist.*, 641 S.W.3d 203, 206 (Mo. banc 2022) (emphasis omitted). "We will not substitute our judgment for that of the administrative agency on factual matters, but we review any questions of law concerning an agency's decision de novo." *Kubiak v. Mo. State Bd. of Nursing*, 667 S.W.3d 230, 235 (Mo. App. W.D. 2023).

**Analysis**

*Point I – Denial of Continuance*

In her first point, Snethen asserts the Board abused its discretion in denying her request to continue the probation violation hearing to allow her to retain counsel, arguing "the denial violated her statutory right to a reasonable time to prepare for and present evidence at the hearing."

Chapter 536 of the Revised Statues of Missouri—which governs administrative procedure—provides that in any contested case, "[r]easonable opportunity shall be given for the preparation and presentation of evidence," notice shall be given "a reasonable time before the hearing," and a "reasonable time shall be at least ten days except in cases where the public morals, health, safety or interest may make a shorter time reasonable[.]" §§ 536.063(3), 536.067(4); *see also* § 335.066.16(2) ("The board [of nursing] shall provide the licensee not less than ten days' notice of any hearing held pursuant to chapter 536.").

In ruling on a motion to continue, the Board enjoys broad discretion, and its decision "will not be disturbed on appeal in the absence of a showing of abuse of that discretion." *Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58*, 836 S.W.2d 943, 948 (Mo. banc 1992) ("An administrative agency is given broad discretion in such decisions and the appellate

7

court will give every possible intendment to the decision of the agency and such ruling will not be set aside unless it is shown that the denial of a continuance is abused by an arbitrary and capricious ruling." (internal marks omitted)). Although Snethen contends "it was an abuse of discretion to deny a continuance with less than three weeks' notice of the hearing over the Thanksgiving holidays and she was unable, despite efforts to retain counsel, to find an attorney to assist her,"[3] we need not determine whether the Board abused its discretion because we find Snethen has failed to demonstrate prejudice from the denial of her continuance request.

"No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b); *see also Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 172-73 (Mo. App. W.D. 2021) ("Appellate review is for prejudice, not mere error," and "[p]rejudicial error is an error that materially affects the merits and outcome of the case." (internal marks omitted)). To that end, a party appealing the denial of a continuance request "must make a strong showing of . . . prejudice resulting from the denial of the request" in order to prevail on appeal. *In re A.L.R.*, 511 S.W.3d 408, 414 (Mo. banc 2017); *see also Scott v. Scott*, 147 S.W.3d 887, 897 (Mo. App. W.D. 2004) (in reviewing the denial of a motion for continuance, "[r]eversal is warranted only upon a very strong showing that the court abused its discretion and prejudice resulted").

---

[3] The Thanksgiving holiday fell on Thursday, November 24th. Snethen's continuance request made no reference to the Thanksgiving holiday, nor did she testify at the hearing that the holiday impacted her ability to prepare for the hearing or obtain counsel.

To establish prejudice, the appellant must demonstrate "how granting the continuance could have affected the outcome of the case." *State v. Dierks*, 564 S.W.3d 354, 359 (Mo. App. E.D. 2018). "[B]are and conclusory allegations" are insufficient. *Id.* at 359-60 ("When the defendant cannot point to specific information further investigation or preparation would have uncovered that would have benefitted his defense at trial and does not explain how more time to prepare would have made his defense more effective, then he has not demonstrated prejudice." (internal marks omitted)); *see also State v. Christeson*, 50 S.W.3d 251, 262 (Mo. banc 2001) (The defendant "has not shown what evidence he would have developed had a continuance been granted; thus, he has not made the required strong showing of prejudice.").

Snethen has not shown that granting a continuance would have affected her case, and thus she has not made the "strong showing of prejudice" required to prevail on appeal. Snethen admitted to violating the terms of her probation, and on appeal she does not challenge the underlying facts leading to the Board's decision. Indeed, the hearing record establishes undisputed facts that would have been available to the Board regardless of a continuance, and Snethen offers no explanation as to how continuing the hearing would have altered the fact that she violated her probation fourteen times.

Although Snethen contends that, had she been granted a continuance to obtain counsel, "she presumably had coworkers and employers who could have testified on her behalf," and "[p]erchance, [her] treatment professional might have useful information for the Board," these are no more than bare and conclusory allegations that are insufficient to

9

establish prejudice.[4] *See Dierks*, 564 S.W.3d at 359-60. Snethen fails to point to specific information that would have been presented at a continued hearing, or explain how it would have altered the outcome of her case: she does not identify any specific witnesses she contends would have actually provided testimony, describe the substance of their proposed testimony, or explain how their testimony would have affected the Board's decision. Similarly, although Snethen asserts that "[w]ith the assistance of counsel the Board's attention might have been drawn to its own records of more than four years of employer evaluations required by Snethen's probation order," Snethen does not describe what information her employer evaluations would have provided, nor explain how the information would have affected the Board's decision.

For these reasons, we find Snethen has failed to demonstrate prejudice from the Board's denial of her continuance request. Point I is denied.

*Point II – Imposition of Additional Discipline*

In her second point, Snethen asserts the Board's decision to impose additional discipline on her license was not supported by competent and substantial evidence. We disagree.

"Upon finding that a nurse has violated any disciplinary terms previously imposed or agreed to pursuant to a settlement, Section 324.042 permits the Board to impose as additional discipline any discipline it would be authorized to impose in an initial

---

[4] We also note that Snethen does not contend the ability of these witnesses to testify on her behalf hinged on whether she was able to obtain counsel. In other words, there is no suggestion that these witnesses could not have testified unless she retained counsel.

disciplinary hearing," including censure, probation for up to five years, suspension, or revocation of the nurse's license. *Walsh*, 689 S.W.3d at 570 (internal marks omitted). "The severity of discipline to be imposed rests in the discretion of the Board." *Id.* "The Board's decision as to discipline will be upheld unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion; or unauthorized by law." *Id.* "Substantial evidence is competent evidence that, if believed, has probative force upon the issues." *Id.* at 569.

Snethen does not dispute that she violated the terms of her probation. At the hearing she admitted to violating her probation, and records from the TPA were admitted showing Snethen failed to check in with the TPA on five occasions, she checked in with the TPA outside the time window on two occasions, she submitted six samples with creatinine levels under 20, and she submitted one sample that tested positive for alcohol metabolites. As a result, the Board was authorized to discipline Snethen's license, and its decision to impose an additional term of probation was supported by competent and substantial evidence. *See Walsh*, 689 S.W.3d at 570-72 (where nurse admitted to violating her probation by failing to check in with the TPA, submitting samples with low creatinine readings, and on one occasion testing positive for alcohol—which she claimed was due to inadvertently consuming cough syrup that contained alcohol—"the Board's decision to extend [her] probation for four years subject to the same terms and conditions as the initial disciplinary order was within the statutory range of discipline available to the Board, and such discipline was supported by competent and substantial evidence" (internal marks omitted)).

11

Snethen argues that, even though all evidence before the Board showed she violated her probation on multiple occasions, the Board should not have imposed additional discipline on her license. Relying on *Casnocha-Jones v. State Board of Nursing*, 686 S.W.3d 695 (Mo. App. W.D. 2024), she argues the Board was required to "consider not only the nature of the misconduct which provides cause for discipline, but also evidence of [her] rehabilitation and other mitigating circumstances," which the Board failed to do.

Contrary to Snethen's assertion, the Board *did* consider mitigating circumstances when determining the appropriate discipline for Snethen's probation violations. The Board "commend[ed] [Snethen's] efforts to better herself and tak[e] responsibility for her actions," and imposed probation, as opposed to the more severe options for discipline available, such as suspension or revocation.

Moreover, we find Snethen's reliance on *Casnocha-Jones* misplaced, as that case involved an initial disciplinary proceeding (not a probation violation hearing) in which the entirety of the nurse's misconduct occurred many years before the hearing. 686 S.W.3d at 698-700. The nurse in *Casnocha-Jones* was terminated from her employment in July 2019 for diverting opioid pain medications for personal use while working at a hospital. *Id.* at 698-99. In 2022, the Board conducted a disciplinary hearing. *Id.* at 700. At the hearing, the nurse presented substantial evidence of her post-misconduct repentance, rehabilitation, and recovery. *Id.* at 707. Nonetheless, the Board revoked the nurse's license, "focusing exclusively on the nature of [the nurse's] underlying misconduct, and disregarding her extensive, years-long rehabilitation efforts," even though the evidence of her rehabilitation was undisputed and the Board never found the evidence lacked credibility. *Id.* at 707-08.

12

We determined the Board's decision to revoke the nurse's license was not supported by competent and substantial evidence, as "the issue in a disciplinary hearing centers on the licensee's fitness for licensure *at the time of the hearing*," and "where the hearing takes place long after the licensee's underlying misconduct, it is improper to focus solely on the underlying events without considering significant evidence of intervening rehabilitation and repentance." *Id.* at 708 (emphasis in original).[5]

Unlike in *Casnocha-Jones*, here, Snethen's misconduct—the violations of her probation—spanned the length of her probationary period up until her hearing date. She violated her probation in 2018, 2019, 2020, and 2022. Her most recent violation—submitting a sample that tested positive for alcohol metabolites—occurred just three months prior to her hearing. One month before submitting that alcohol-positive sample, Snethen failed to timely check in with the TPA. Given that Snethen's misconduct occurred recently before the hearing, and spanned her probationary period, we find the Board appropriately considered the underlying misconduct in determining Snethen's fitness for licensure at the time of the hearing.

For these reasons, we find the Board's decision to impose an additional term of probation on Snethen's license was supported by competent and substantial evidence. Point II is denied.

---

[5]Although we determined the Board's decision to revoke the nurse's license was not supported by competent and substantial evidence, we upheld the decision to impose *some* discipline on her license: we affirmed the judgment of the trial court that ordered the Board grant the nurse a license subject to a three-year term of probation. 686 S.W.3d at 709.

In her third point, Snethen asserts the Board erred in finding she violated her probation by testing positive for alcohol, in that "prohibiting the use of alcohol in any form by a licensee with no history of abuse of alcohol violates the [ADA]." In other words, Snethen contends the probation condition of the 2018 order that prohibited her from consuming alcohol violated the ADA, and therefore imposing discipline upon her for violating that term was unlawful. However, Snethen waived any challenge to the terms of the 2018 probation order by failing to timely seek review of that order.

The Board may grant a license subject to probation "for reasons which also serve as a basis for filing a complaint with the administrative hearing commission [("AHC")] seeking disciplinary action." § 324.038.1. If the Board grants a license subject to probation, it must notify the applicant of the terms and conditions of the probation and that the applicant has the right to a hearing before the AHC seeking review of the Board's decision. § 324.038.2. If the applicant seeks review of the Board's decision, she must file her complaint with the AHC "within thirty days of the date of delivery or mailing by certified mail of written notice of the probation." *Id.* "If no written request for a hearing is received by the [AHC] within the thirty-day period, the right to seek review of the board's decision shall be considered waived." *Id.*

The 2018 order advised Snethen of the terms and conditions of her probation— including that she was required to abstain from consuming alcohol. The 2018 order also advised Snethen of her right to seek review of the Board's decision with the AHC within thirty days. Within two weeks of the Board issuing the 2018 order, Snethen met with the

14

Board's Director of Compliance, and Snethen signed an acknowledgment form stating she fully understood the terms and conditions of her probation. Snethen never filed a complaint with the AHC seeking review of the 2018 order. Accordingly, Snethen has waived any challenge to the terms and conditions of her initial probation, including that such terms and conditions violated the ADA. *See* § 324.038.2; *see also Walzer v. Mo. Bd. of Nursing*, 702 S.W.3d 518, 524 (Mo. App. W.D. 2024) (refusing to address the merits of nurse's argument that alcohol-restrictive term of her probation violated the ADA: nurse waived any challenge to the validity of the terms of her probation by failing to appeal the probation order); *Walsh*, 689 S.W.3d at 571 ("[T]o the extent Walsh contends that the original order requiring her to submit to drug testing was unwarranted given the nature of her underlying misconduct, Walsh had the opportunity to seek[] judicial review of the original disciplinary order when it was entered; we will not permit her to collaterally attack the original conditions of her probation in this probation violation proceeding.").

Because we find Snethen waived any claim of error relating to the terms and conditions of her 2018 probation, Point III is denied.

*Point IV – ADA Violation – 2023 Order*

In her fourth point, Snethen asserts the Board erred in imposing terms of probation upon her license in 2023 "that restrict her use of alcohol and other foodstuffs, because prohibiting the use of alcohol in any form or other foodstuffs by a licensee with no history of abuse of alcohol or any drug other than methamphetamine violates the [ADA]." Snethen seeks review of the Board's decision pursuant to section 536.140.2(4), which provides that we will affirm an agency's action unless it is "unauthorized by law." We find that Snethen

15

has failed to prove the Board's action was "unauthorized by law" in that she has failed to prove the terms of her probation violate the ADA.

"The ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.'" *Bechtel ex rel. Bechtel v. State Dep't of Soc. Servs.*, 274 S.W.3d 464, 467 (Mo. banc 2009) (quoting 42 U.S.C. § 12132). "To establish a violation of the ADA, [Snethen] must show that: (1) she is a qualified individual with a disability; (2) she was otherwise qualified for the benefit in question; and (3) that she was excluded from the benefit due to discrimination based upon disability." *Id.* (internal marks omitted) (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)); *see also Hall v. Higgins*, 77 F.4th 1171, 1181 (8th Cir. 2023) ("To prove his ADA claim, Hall must demonstrate that he is a qualified individual with a disability and that because of his disability, he was excluded from participation in or denied benefits of the [public entity's] services, programs, or activities.").

Snethen does not acknowledge the elements required to prove an ADA violation by a public entity, let alone explain how she has satisfied these elements and established a violation. She argues broadly that the Board is a public entity and thus "is prohibited from discriminating against [her]," and "[t]he imposition of five additional years of probation including drug testing, employment restrictions, quarterly evaluations of her job performance, and quarterly reports to the Board is contrary to the Americans with

16

Disabilities Act." But she does not clarify what disability she claims to have,[6] what benefit she asserts she was denied, or how the Board action's constituted discrimination based on her purported disability. Snethen bore the burden of establishing the Board's actions violated the ADA, and thus were "unauthorized under the law." *See Wagner v. Mo. State Bd. of Nursing*, 570 S.W.3d 147, 152 (Mo. App. W.D. 2019) ("The Board's decision is presumed valid, and the burden is on the party attacking it to overcome that presumption."). Snethen has failed to satisfy her burden.

To the extent that Snethen also argues the Board's decision to impose alcohol-restrictive probation terms was not supported by competent and substantial evidence, we disagree.[7] In *Walsh*, the nurse raised a similar argument, challenging the Board's imposition of alcohol-restrictive probation terms and arguing "the Board disregarded the

---

[6] Snethen references a finding of the Board that she "has been diagnosed with Amphetamine-type substance use disorder," but Snethen never contends this disorder constitutes a "disability" as that term is defined in the ADA. "The ADA prohibits discrimination only against those individuals who can show that they are 'disabled' as that term is defined in the ADA"; the "establishment of such a disability is a prerequisite for relief." *Kemp v. Holder*, 610 F.3d 231, 236 n.1 (5th Cir. 2010); *see also Johnson v. City of Kan. City*, 695 S.W.3d 165, 174 (Mo. App. W.D. 2024) ("An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability[.]'" (quoting *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999))).

[7] In the argument section of her brief, Snethen asserts the Board's 2023 order "is unsupported by competent and substantial evidence upon the whole record[.]" This is a separate and distinct claim from the one raised in her point relied on—that the Board's action was unauthorized by law. *See Crowell v. Cox*, 561 S.W.3d 882, 890 n.12 (Mo. App. W.D. 2018) (claim that Commission's decision was not supported by competent and substantial evidence was separate and distinct from claim that Commission misapplied the law). "The argument shall be limited to those errors included in the 'Points Relied On,'" Rule 84.04(e), and "[a]n argument that is not included within the point relied on is not preserved for appeal," *Cmty. Bank of Raymore v. Patterson Oil Co., Inc.*, 463 S.W.3d 381, 387 n.5 (Mo. App. W.D. 2015). While we exercise our discretion to address the merits of Snethen's challenge relating to the competency of the evidence, we are under no obligation to do so. *See Patterson Oil*, 463 S.W.3d at 387 n.5.

fact that she is not an impaired nurse and that the order serves as punishment rather than protection." 689 S.W.3d at 571. In rejecting this argument, we noted that the nurse cited to "no authority requiring the Board to find evidence of chemical dependence or impairment before imposing abstinence from alcohol and mandatory alcohol and drug testing as a condition of her probation." *Id.* Similarly here, Snethen cites to no authority to support such an argument. Snethen has failed to demonstrate the Board's 2023 order was unsupported by competent and substantial evidence.

For these reasons, Point IV is denied.

## Conclusion

The trial court's judgment affirming the Board's disciplinary order is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.